[No. 25677-7-I. Division One. September 23, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. DEREK
MELTON, *Appellant*.

64

*David G. Skeen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John L. Belatti, Deputy,* for respondent.

FORREST, J. — Derek Melton, a minor, appeals from a judgment of manslaughter in the first degree, arguing that

continuance of his trial violated his speedy trial rights; severance of his trial from his codefendant should not have been denied; and the court erred in sentencing him to an exceptional sentence. We affirm.

On November 20, 1989, Derek Melton and Aaron Harvego, both minors, were walking in the woods near Kent. Michael Folk, a neighbor whose house bordered on the woods, heard several shots, and a few minutes later saw the boys walking on a trail behind his house. Harvego was carrying a rifle. Folk went outside to speak to the boys after he called the police. Melton had a tackle box, which Folk asked about, and saw that it contained .22 caliber shells and shotgun shells. Neither of the boys had a gun. Folk asked Melton where the gun was, and Melton said that Aaron had put it somewhere. Folk asked whether they were shooting in the woods, and Melton said "I think we shot somebody. I hope we didn't." Later, Melton ran away, and Folk and a friend chased him and pulled a rifle scope out of his pocket.

Another neighbor, Ernest Wilder, testified that he asked Melton what he was shooting at, to which Melton responded, "Don't accuse me of shooting, I was not shooting . . .." Melton indicated that Harvego had done the shooting. The two boys were arrested by Kent police.

The following day, November 21, 1989, Wilder was in the woods with his son when they came upon the body of the victim. The bullet that killed him was fired from the gun found in the vicinity.

Juvenile court set trial January 10, 1990, for both boys. Harvego moved for a continuance until January 24, 1990, which the court granted. Melton moved to dismiss for violation of his speedy trial rights, which expired January 17, 1990. The State argued that Melton's rights were not substantially prejudiced and that there were strong circumstances favoring a joint trial. The juvenile court denied Melton's motion to dismiss.

Before trial, Melton moved to sever his trial from Harvego's because Harvego had given a statement to the

police that implicated Melton. The prosecutor objected, stating that he did not intend to use Harvego's statement against Melton, and that he would delete any reference to Melton in the statement. Juvenile court denied Melton's motion to sever, and allowed Harvego's redacted statement.

At a bench trial, Harvego's counsel cross-examined Detective Krogh about information that was included in the statement before it was redacted. Counsel for Melton objected more than a dozen times, with every objection sustained by the judge.

The trial court found that both Harvego and Melton fired the rifle, and that Melton fired a fourth (and presumably fatal) shot. The court stated that the two boys aided and abetted each other. The judge found both boys guilty of manslaughter in the first degree. After finding manifest injustice, the court sentenced Melton to 240 weeks, outside the standard range of 103 to 129 weeks.

### SPEEDY TRIAL ISSUE

The trial court granted codefendant Harvego's motion for a continuance which resulted in a trial date 7 days past the expiration of Melton's speedy trial date. JuCR 7.8(e)(2)(iii) provides for a continuance when required in the due administration of justice and the alleged juvenile defender will not be substantially prejudiced in the presentation of his or her defense. In the present case no prejudice is asserted or identified.

■ The standard of review for a continuance is whether the trial court abused its discretion:

> The grant or denial of a motion for continuance is within the trial court's discretion and will not be disturbed absent a showing that the court abused its discretion and the defendant was prejudiced thereby. . . . Discretion is abused if it is exercised on untenable grounds or for untenable reasons.

*State v. Barnes*, 58 Wn. App. 465, 471, 794 P.2d 52, *review granted*, 115 Wn.2d 1022 (1990). Additionally, "[t]rial within 60 days [or 30 days for juveniles] is not a constitutional mandate." *State v. Hoffman*, 116 Wn.2d 51, 77, 804 P.2d 577 (1991). The court's finding of fact 11 stated that "[a] con-

tinuance of this matter to coincide with *State v. Aaron Harvego*, cause #89-8-06335-4, is needed in the due administration of justice." The court was entitled to rely on the State's policy favoring joint trials and there is no showing that the continuance was motivated by considerations held inappropriate in *State v. Mack*.[1] Defendant's reliance on *State v. Wake*[2] is misplaced. *Wake* deals with a prosecutor's failure to subpoena a witness, not with the court's implementation of the joint trial policy. Severance is not mandatory even where a defendant's speedy trial rights are at issue.[3] We find no abuse of discretion.

### SEVERANCE ISSUES

■ Severance of trials is required where a nontestifying codefendant's out-of-court statement refers to the defendant and is used by the prosecutor unless the statement's references to the defendant are excised. CrR 4.4(c).[4] The rule was adopted to avoid the constitutional problem dealt with in *Bruton v. United States*.[5] Washington law is in accord.

---

[1] 89 Wn.2d 788, 576 P.2d 44 (1978).

[2] 56 Wn. App. 472, 783 P.2d 1131 (1989).

[3] *State v. Eaves*, 39 Wn. App. 16, 691 P.2d 245 (1984) (upholding a trial court's 3-day continuance of the defendant's trial date 3 days past the speedy trial date due to the unavailability of a codefendant's counsel).

[4] CrR 4.4(c) provides:
"(1) A defendant's motion for severance on the ground that an out-of-court statement of a codefendant referring to him is inadmissible against him shall be granted unless:
". . . .
"(ii) deletion of all references to the moving defendant will eliminate any prejudice to him from the admission of the statement."

[5] 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). In *Bruton*, the United States Supreme Court held that the defendant was deprived of his Sixth Amendment confrontation rights when he was incriminated by a pretrial statement made by a codefendant who did not take the stand at trial. *Richardson v. Marsh*, 481 U.S. 200, 95 L. Ed. 2d 176, 107 S. Ct. 1702 (1987) relaxed the *Bruton* requirements where a codefendant's statement is redacted to exclude any reference to the accused.

> Separate trials are not favored in Washington and defendants seeking severance have the burden of demonstrating that a joint trial would be so manifestly prejudicial as to outweigh the concern for judicial economy. The existence of mutually antagonistic defenses is not alone sufficient to compel separate trials. Rather, it must be demonstrated that the conflict is so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. The burden is on a moving party to come forward with sufficient facts to warrant the exercise of discretion in his or her favor.

(Footnotes omitted.) *Hoffman*, at 74. *Hoffman* upheld the lower court's refusal to sever the defendants' trials because the prosecutor elected not to use one defendant's statement against the other in the State's case in chief. In this case, the prosecutor relied on a redacted statement with references to Melton stricken. Accordingly, the original denial of severance is proper under CrR 4.4(c).

■■ Melton's principal argument, however, is that during trial the redacted statement was circumvented by aggressive questioning of Detective Krogh by Harvego's counsel.[6] Although some inferences regarding Melton's role in the shooting may have been implied by those questions, Melton's objection to each question that purported to bring in information from the excised portion of the statement was sustained by the trial court. A trial judge is presumed to be able to disregard inadmissible evidence, thus avoiding any prejudice to the defendant. "In a bench trial, there is even a more 'liberal practice in the admission of evidence' on the theory that the court will disregard inadmissible matters." *State v. Jenkins*, 53 Wn. App. 228, 231, 766 P.2d 499 (quoting *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970)), *review denied*, 112 Wn.2d 1016 (1989).

---

[6]*Richardson v. Marsh*, 481 U.S. 200, 95 L. Ed. 2d 176, 107 S. Ct. 1702 (1987). The court in *Richardson* remanded, not because the confession was incriminating on its face, but because it "became so only when linked with evidence introduced later at trial . . .." *Richardson*, at 208. The "linkage" in *Richardson* occurred when the prosecutor subverted the limiting instruction in his closing argument by asking the jury to compare the statement with the defendant's testimony.

Nevertheless, Melton maintains that information from the redacted portion of the statement was considered by the trial court as evidenced by questions asked during final argument and the answers given by the prosecutor. We find Melton's quote of the following language unpersuasive:

> THE COURT: Just to be clear in our thinking, then, where we are, or where do you think we ought to go based on the facts, because we don't have in the record that the death resulted from Aaron's acts, so Aaron's acts alone cannot support a finding by the court of homicide resulting from his acts?
>
> You have to rely on the inferences to be drawn which lead you to conclude that the fatal shot was from Derek?
>
> [PROSECUTOR]: From someone else, from Derek.

This does not show any improper consideration by the court of excised portions of the codefendant's statement. The court appropriately questioned the prosecutor about what the testimony and information before the court showed as to Melton's guilt. The evidence properly before the court clearly substantiates the court's finding of guilt. Melton admitted that "I think we may have shot somebody. I hope we didn't." Melton's tackle box contained .22 caliber shells and shotgun shells and he had a rifle scope in his back pocket. Indeed, as the court found, Melton and Harvego aided and abetted the other so it was not even essential to find that Melton fired the fatal shot.

Finally, Melton cites the trial court's observation that Melton's testimony "is difficult to coincide . . . with the physical facts, the testimony of Aaron Harvego, and the other evidence." This does not necessarily imply, as Melton contends, that the court relied on language excised from Harvego's statement. The court apparently misspoke since Harvego did not testify. The statement suggests that the court was referring to three types of evidence: physical *evidence*, Harvego's *statement* (not his testimony because he did not testify), and other *evidence*. Melton fails to show that the judge improperly used the excised portions of Harvego's statement or that he was unfairly prejudiced by the joint trial.

■ The denial of a severance motion is reviewed for a manifest abuse of discretion.[7] We find no abuse of discretion denying either of Melton's severance motions.

## MANIFEST INJUSTICE FINDING

■ Melton argues that the finding of manifest injustice is not supported by the record, nor by clear and convincing reasons. RCW 13.40.230(2).[8] Once a court determines that a disposition within the standard range would effectuate a manifest injustice, a trial court

> is vested with broad discretion in determining what sentence to impose. A disposition will be reversed only if the sentence imposed is so clearly excessive as to constitute an abuse of discretion. RCW 13.40.230(2)(b) . . ..

*State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989).

In the present case the trial court made the following findings of fact on manifest injustice, of which findings 4, 5, 6, 7, and 8 correspond to aggravating factors listed at RCW 13.40.150(3)(i):

> (1) Respondent is a "serious offender" as defined by RCW 13.40.020(1)(b).
> (2) The standard range for this offense for respondent is 103-129 weeks confinement.
> (3) There are no significant mitigating factors in this matter.
> (4) In the commission of this offense, the respondent inflicted or attempted to inflict serious bodily injury to the victim. Death resulted.
> (5) This offense was committed in a cruel and calloused manner. It is not debatable that respondent left the victim lying in the woods without checking on him.

---

[7]*State v. Lane*, 56 Wn. App. 286, 298, 786 P.2d 277 (1989); *State v. Brown*, 45 Wn. App. 571, 577, 726 P.2d 60 (1986).

[8]RCW 13.40.230(2) states:

"To uphold a disposition outside the standard range . . . the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range . . . would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient."

(6) It is without dispute that the victim was particularly vulnerable.

(7) The respondent has a recent and extensive criminal history. Respondent has failed to comply with conditions of a recent dispositional order dated August 24, 1989.

(8) New complaints and charges are pending against respondent, including three counts of Burglary in the First Degree, one count of Theft in the Second Degree, and two counts of Burglary in the Second Degree.

(9) The evidence is clear that respondent is a substantial danger to society.

(10) Treatment has been attempted for respondent in the past, and he has not been receptive.

(11) Respondent continues to deny participation in the crime and shows no remorse.

(12) Respondent is amenable to treatment, as demonstrated in the probation officer's report.

(13) Respondent is in dire need of a long-term period of treatment, as recommended by Dr. Richard Palmer, Ph.D.

(14) Juvenile resources, including psychological assistance, academic training and vocational training, should be extended to respondent for a period of 276 weeks.

Findings of fact 1-14.

A number of these aggravating factors are not sustained by the record. In *State v. Payne*,[9] the court reversed a finding of manifest injustice, holding that three aggravating factors (infliction of serious bodily injury, especially cruel manner of crime, and particularly vulnerable victim) were incorporated in the charge of murder or were inappropriate to consider.

 Here, serious bodily injury (finding of fact 4) is inherent in any murder; the victim in this case was not particularly vulnerable (finding of fact 6) from "some disability due to age or a physical or mental condition". *State v. Wall*, 46 Wn. App. 218, 222, 729 P.2d 656 (1986). The offense of killing the victim is not more cruel (finding of fact 5) by the fact that Melton left the scene without checking on the victim's condition. Cruelty is defined as gratuitous violence or other conduct inflicting pain as an end in itself.[10]

---

[9]58 Wn. App. 215, 219, 795 P.2d 134, 805 P.2d 247 (1990).

[10]*State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989).

The State cites no authority for the use of pending charges as an aggravating factor. Such use violates the presumption of innocence. Lack of remorse (finding of fact 11) is dubious in light of the probation officer's statement that Melton had empathy toward the victim's family.

We are troubled by the prosecutor's including, and the court's signing, a manifest injustice finding based on so many clearly inappropriate factors.[11] We are satisfied, however, that if remanded for resentencing the trial court would impose the same sentence, and properly so, based on the appropriate factors of the need for rehabilitation and treatment and to protect society from dangerous offenders.[12]

Here, the principal factor in the original decision to retain jurisdiction in juvenile court was the psychological evaluation reports which unequivocally found Melton to be in need of long-term residential treatment and to be a substantial danger to the community in his present condition.[13] This same information supports the trial court's finding of manifest injustice. The finding is further reinforced by

---

[11]Comparing RCW 13.40.150(3)(i), it appears the prosecutor listed aggravating factors without considering whether they were supported by the record.

[12]*State v. Tauala, supra* at 88. The court in *State v. Campas*, 59 Wn. App. 561, 567-68, 799 P.2d 744 (1990) stated that:
"Where the sentencing judge has given both proper and improper grounds for imposing an exceptional sentence, this court may affirm rather than remand when it is satisfied that the trial court would have imposed the same sentence absent the improper factor."

[13]Kenneth Von Cleve, a clinical psychologist, stated:
"Based on background, history, clinical presentation, interview, and test data, Derek is viewed as a relatively high risk for further delinquent behaviors. His personality style and recent history of delinquency, in conjunction with possible chemical dependency issues, strongly suggest a high risk for further delinquent acts."
Richard Palmer, another clinical psychologist, stated that:
"Yet more disturbing [than Melton's pronounced inability to delay gratification] was the high level of anger he was manifesting, the extent to which he was preoccupied with his angry thoughts/fantasies, and the discovery of the arson and mistreatment of animals. He seems consumed by rage which originated with his stepfather but is now so pervasive that it extends much farther and he seems to be increasingly acting on this rage. I am far from certain that the shot

Melton's recent criminal history and his previous failure to comply with a disposition order. RCW 13.40.150(3)(i)(iv). Melton's criminal history in 1988 included separate incidents of burglary, two thefts, and possession of stolen property. The probation report states that Melton ran away three times since being placed on probation.

We find no violation of Melton's speedy trial rights, no error in the denial of his severance motions, no error in the finding of manifest injustice, and no excessiveness in the sentence imposed.

Affirmed.

GROSSE, C.J., and WEBSTER, J., concur.

Review denied at 118 Wn.2d 1016 (1992).

at his sister was the accident that all involved claim it was. Derek seems badly out of control and to be deteriorating.

"....

"... Treatment in a long-term inpatient program for dual-diagnosis adolescents would be very appropriate. . . . The problems are serious and worsening and without these major interventions the prognosis for change is very poor.

"....

"There are some warning signs that Derek may be becoming increasingly dangerous to others and his behavior needs to be continually monitored with regard to the ways he is dealing with the rage he experiences."