915 P.2d 567 (1996)
81 Wash.App. 508
The STATE of Washington, Respondent,
v.
James G. FOSTER, Appellant.
No. 34402-1-I.
Court of Appeals of Washington, Division 1.
May 6, 1996.
*568 Deborah A. Dwyer, King County Pros. Atty. Office, Seattle, for Respondents.
Eric J. Nielsen, Nielsen & Acosta, Seattle, for Appellant.
COLEMAN, Judge.
James Foster appeals his conviction on five counts of indecent liberties, primarily arguing that prosecution of these charges was barred by the statute of limitation and that he was denied effective assistance of counsel. We hold that the statute of limitation did not bar prosecution of these offenses because the Legislature increased the limitation period applicable to indecent liberties committed against children under the age of fourteen before Foster's acts would have been time barred under the previous limitation period. We further find that any deficiencies in defense counsel's performance had no prejudicial effect on the outcome of the case. Foster also raises a multitude of issues pro se, many of which lack legal support or cannot be determined on the record. He correctly asserts that the judgment and sentence misstated the statute under which he was convicted and improperly ordered him to submit to HIV testing. Accordingly, we affirm in part and reverse in part.
Foster and Sally Jolly were married in 1971. The following year they adopted BS, who was born on September 20, 1972. Foster and Jolly dissolved their marriage in 1990. After the dissolution, BS alleged that Foster had sexually abused her as a child. On February 22, 1993, Foster was charged with three counts of indecent liberties pursuant to former RCW 9A.44.100(1)(b). The information was amended five months later to add two counts of indecent liberties and four counts of first degree incest. The five counts of indecent liberties were alleged to have occurred between May 13, 1982, and September 19, 1986, during which time BS was nine to thirteen years old. The trial court dismissed the incest charges as barred by the statute of limitation. Foster waived a jury trial, and the court found him guilty of five counts of indecent liberties.
We first address Foster's contention that he was not charged within the statutory limitation period. The Legislature has extended the statute of limitation for sexual crimes committed against children several times in the past fifteen years because "experience had shown that due to fear, lack of understanding or manipulation of the victim by the offender, victims of child abuse sometimes did not report it within the shorter limitation periods." State v. Hodgson, 108 Wash.2d 662, 666, 740 P.2d 848 (1987) (footnote omitted) (citing Final Legislative Report, 47th Legislature (1982), at 154 (SSB 4461); House Bill Report, 47th Legislature (1982) (SSB 4461); Final Legislative Report, 49th Legislature (1985), at 273 (SB 3393)), cert. denied, Fied v. Washington, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988). Originally, sexual crimes against children came within the general three-year felony statue of limitation. The limitation period pertaining to these crimes was increased to five years in 1982 and further extended to seven years in 1985. Hodgson, 108 Wash.2d at 665-66, 740 P.2d 848. Each of these legislative extensions of the limitation period applied to all crimes not already time barred by *569 the former limitation period on the date the amendments became effective. Hodgson, 108 Wash.2d at 666-67, 740 P.2d 848.
Thus, during the years for which Foster was charged, the statute of limitation applicable to sexual crimes committed against children was seven years from commission of the crime. Former RCW 9A.04.080(1986) provided:
Prosecutions ... may be commenced... for violations of RCW 9A.44.070 [first degree statutory rape], 9A.44.080 [second degree statutory rape], and 9A.44.100(1)(b), within seven years after their commission[.]
(emphasis added) Laws of 1986, ch. 85, § 1 (increasing limitation period from five to seven years); Former RCW 9A.04.080 (1986). During the charging period, the referenced statute under which Foster was charged, former RCW 9A.44.100(1)(b), provided:
A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

. . . . .
(b) When the other person is less than fourteen years of age[.]
The Legislature rewrote this statute in 1988. The criminal act of sexual contact with minors was removed from the indecent liberties statute and recodified as first and second degree child molestation in RCW 9A.44.083 and -.086.[1] Laws of 1988, ch. 145, §§ 5, 6, 10. RCW 9A.44.100(1)(b) no longer addressed sexual contact with minors. That subsection of the indecent liberties statute was amended to cover sexual contact
(b) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless[.]
Laws of 1988, ch. 145, § 10; Former RCW 9A.44.100(1)(b) (1989).
When the Legislature recodified the crime of sexual contact with children under the age of fourteen in 1988, it also amended the applicable statute of limitation. The statute of limitation no longer mentioned RCW 9A.44.100(1)(b) and referred instead to the newly created statutesfirst and second degree child molestation. In 1989, the Legislature enacted further amendments to the limitation statute, making two changes pertinent here. The 1989 amendments restored the reference to the former indecent liberties statute and increased the limitation period, effective May 11, 1989. Laws of 1989, ch. 317, § 3. After these amendments, the statute of limitation provided:
Violations of the following statutes shall not be prosecuted more than three years after the victim's eighteenth birthday or more than seven years after their commission, whichever is later: RCW 9A.44.073, 9A.44.076, 9A.44.083, 9A.44.086, 9A.44.070, 9A.44.080, or 9A.44.100(1)(b) [.]
RCW 9A.04.080(1)(c) (emphasis added). Under Hodgson, the extended limitation period applies to all crimes not already time barred by the previous limitation period on the date the extension took effect.
In State v. Horn, 59 Wash.App. 664, 801 P.2d 245 (1990), review denied, 116 Wash.2d 1016, 807 P.2d 883 (1991), the defendant was charged in 1988 with having committed statutory rape in the first degree and indecent liberties for events that allegedly occurred from 1984 through 1986. Horn argued that by eliminating RCW 9A.44.100(1)(b) from the statute of limitation in the 1988 amendments, the Legislature intended the 3-year default limitation period to apply to indecent liberties committed against children under former RCW 9A.44.100(1)(b). The court rejected this argument, relying in part on the Legislature's explanation that omission of RCW 9A.44.100(1)(b) from the statute of limitation in 1988 had been inadvertent.
The legislature further finds that the enactment of chapter 145, Laws of 1988, *570 which deleted specific reference to RCW 9A.44.070, 9A.44.080, and 9A.44.100(1)(b) from RCW 9A.04.080 and also deleted those specific referenced provisions from the laws of Washington, did not intend to change the statute of limitations governing those offenses from seven to three years.
Horn, 59 Wash.App. at 666, 801 P.2d 245 (quoting Laws of 1989, ch. 317, § 1(2)).
Foster does not contend that his actions were time barred when the 1989 amendments extended the statute of limitations. Instead, Foster asserts by inserting RCW 9A.44.100(1)(b) into the statute of limitation in 1989, the Legislature was referring to the current version of the statute, as it was amended in 1988 to criminalize sexual contact with those incapable of consenting due to mental or physical defect. He argues that the Legislature did not increase the limitation period in 1989 for actions criminalized by RCW 9A.44.100(1)(b) prior to its amendment in 1988, when it addressed indecent liberties taken with children under fourteen.
We hold that the current statute of limitation applies to RCW 9A.44.100(1)(b) as it read before its amendment in 1988. We do not agree with Foster that the limitation statute plainly and unambiguously refers to the current version of RCW 9A.44.100(1)(b). Looking to the limitation statute as a whole and to legislative history, it is clear that the Legislature intended to extend the statute of limitations in 1989 for crimes of sexual abuse committed against children. In explaining the intended scope of the 1989 increase in the limitation period, the Legislature stated that the increase applied to former RCW 9A.44.100(1)(b).
The statute of limitation is seven years after the act or three years after the victim turns 18, which ever is later, for the following crimes: Rape of a Child in the first and second degree, Child Molestation in the first and second degree, Statutory Rape in the first and second degree, and, when the victim is under 14, Rape in the first and second degree, Incest and Indecent Liberties.

House Bill Report, 51st Legislature (1989), at 2 (SB 5950) (emphasis added).
The former version of RCW 9A.44.100(1)(b) proscribed indecent liberties taken with children under the age of fourteen. The current version does not address sexual abuse of children. By including RCW 9A.44.100(1)(b) in the category of crimes to which the expanded limitation period appliedsexual crimes against childrenthe Legislature was necessarily referring to the statute as it was worded prior to its amendment in 1988.
The 1989 extension of the statute of limitation to the longer of seven years from commission of the crime or three years after the victim's eighteenth birthday applies to indecent liberties committed against children under the age of fourteen as criminalized by former RCW 9A.44.100(1)(b) prior to 1988. Prosecution of Foster's offenses was not barred by the statute of limitations.
We next address errors in the judgment and sentence pointed out by Foster in his pro se brief. Foster correctly asserts, and the State concedes, that he was ordered to undergo HIV testing in error because the mandatory testing statute does not encompass his crimes. RCW 70.24.340 authorizes the court to order all persons convicted of a sexual offense to submit to an HIV test, but the statute specifically limits its application to offenses committed after March 23, 1988. Foster also notes that the judgment and sentence misstated the statute under which he was convicted. Foster was charged under RCW 9A.44.100(1)(b), indecent liberties with a child under fourteen. The evidence at trial and the trial court's oral ruling indicate that he was found guilty under this subsection. The judgment and sentence, however, cite RCW 9A.44.100(1)(A),[2] indecent liberties by forcible compulsion. This is merely a clerical error which is correctable on remand.
The judgment and sentence are remanded for correction of clerical error, and the order for HIV testing is vacated. The judgment and sentence are affirmed in all other respects.
*571 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
We turn now to Foster's remaining arguments, for which a more detailed recital of the facts is warranted. At trial, BS testified that Foster touched her in a sexual manner during a family camping trip to Port Susan when she was seven years old. BS's former schoolmate, JT, testified that she had also been on the Port Susan trip and that Foster had sexually molested her and then molested BS. According to BS, Foster told the girls that he had not done anything wrong, that they had been the bad ones, and that they should not tell anyone or they would go to jail. Foster later told BS he would harm Jolly, BS's friends, and the family pets if she told anyone about Port Susan.
After the Port Susan incident, Foster was away from the home for over a year. BS testified that he sexually molested her again when he returned, and he continued the abuse until she was about fourteen years old. She stated that Foster penetrated her vagina digitally between five and ten times, forced her to perform oral sex a couple of times, and, as she got older, forced her to touch his penis and help him masturbate "once every two weeks." She further testified that he lifted her shirt and felt her breasts "[a]lmost every time," amounting to "[a] hundred times." Foster continued to threaten to harm her, Jolly, and the family dog if she disclosed the abuse, which he referred to as "Port Susan." Once, after BS watched Foster slam a sliding glass door on their dog, Foster told her that he would kill the dog if she told anyone. BS also testified that Foster had emotionally and physically abused her, and she had seen him do to the same to Jolly.
Jolly testified that she had gone to court with Foster in 1980 "as a result of something that occurred between the defendant and [JT]." Jolly further testified that she had seen Foster verbally abuse BS and the family dog, that Foster had physically and verbally abused her, and that BS had witnessed this abuse.
After the Port Susan incident, Child Protective Services referred Foster to the Sexual Assault Center at Harborview for evaluation. Lucy Berliner, M.A., interviewed BS. Berliner testified that BS did not disclose any abuse either at that interview or when they met again nine years later. Berliner further testified that delayed reporting is common for child victims of sexual abuse.
The theory of the defense was that although Foster had acted inappropriately in Port Susan and had accepted responsibility for those actions, he never touched BS sexually. Foster testified that he had exposed his genitals to JT and BS in a moment of poor judgment during the camping trip and pulled down their pants as a kind of game. He asserted that he did not touch their genital areas. He further testified that he immediately felt embarrassed and upset at what he had done, and therefore he pleaded guilty when JT told her parents about the incident and he was charged in connection with her.[3] Foster explained that he was in the King County jail on another matter until December 1981 and lived away from home until the following September. He stated that pursuant to a court order, he was not allowed to be home alone with BS until 1984. Foster denied that he ever touched BS, or forced her to touch him, in a sexual manner. He also denied physically or verbally abusing Jolly or BS. The theory of the defense was that BS fabricated allegations of sexual abuse after the dissolution court returned part of the money to Foster that had been held upon dissolution to cover her education expenses.
The court found Foster guilty of five counts of indecent liberties and imposed an exceptional sentence of 48 months for each count, to run consecutively, for a total of 240 months.

INEFFECTIVE ASSISTANCE OF COUNSEL
To demonstrate that a conviction should be overturned for ineffective assistance of counsel, a defendant must show that (1) counsel's performance, viewed in light of all the circumstances, was deficient and (2) the *572 deficient performance prejudiced the defense so that the outcome of the trial probably would have otherwise been different. State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991) (reciting test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), cert. denied, 506 U.S. 856, 113 S.Ct. 164, 121 L.Ed.2d 112 (1992). "There is a strong presumption that counsel have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment such that their conduct falls within the wide range of reasonable professional assistance." Lord, 117 Wash.2d at 883, 822 P.2d 177. If counsel's trial conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim of ineffective assistance of counsel. Lord, 117 Wash.2d at 883, 822 P.2d 177.
Foster argues that his trial counsel should have objected when the State elicited testimony of (1) a prior conviction that had been ruled inadmissible, (2) other prior convictions and sexual contact with BS outside the charging period, (3) his abusive nature, and (4) his sexual contact with other girls. Considering the facts of this case, however, Foster cannot meet the Strickland standard. Substantially all the evidence Foster challenges was either admitted by the State for proper purposes or elicited by defense counsel to support Foster's theory of the defense. Further, "[t]he decision of when or whether to object is a classic example of trial tactics," and the failure to object justifies reversal only in egregious circumstances on testimony central to the State's case. State v. Madison, 53 Wash.App. 754, 763, 770 P.2d 662, review denied, 113 Wash.2d 1002, 777 P.2d 1050 (1989). Review of the record here reveals that defense counsel objected to admission of selected evidence, suggesting that he exercised reasonable professional judgment in determining when objection was appropriate.
Contrary to Foster's first argument, the State did not introduce evidence that the trial court had ruled inadmissible. Prior to trial, the court found evidence of Foster's 1993 incest conviction in Snohomish County inadmissible for impeachment purposes under ER 609. At trial, the only reference to that conviction was an ambiguous statement made by BS when explaining the events leading up to her disclosure to Jolly. BS stated that she had tried to warn Foster's current wife, who had two teenage daughters, of Foster's history of sexual, physical, and mental abuse, but "[the wife] really didn't believe until it was too late." While this could be interpreted as referring to Foster's 1993 conviction, the veiled remark was too ambiguous to expect counsel to have objected.
Foster's second point is similarly unconvincing. Foster was convicted in 1981 of charges relating to his half-sister, and he served time for that offense. The fact that he lived away from home was relevant to the defense theory that Foster could not have been home alone with BS during part of the charging period. On direct examination Foster himself referred separately to the 1981 conviction and "the charges involving Laura." However, upon defense counsel's objection, the prosecution was not allowed to question Foster about the charges underlying the conviction. The nature of that conviction was not revealed to the court.
Foster next argues that his counsel should have objected to all testimony regarding the Port Susan incident. However, those events provided a complete picture of the current charges of abuse by explaining how and when the abuse started and why BS delayed disclosing it. Moreover, the Port Susan testimony is relevant to show Foster's "lustful disposition" toward BS, and it is and probative of the alleged crimes. See, e.g., State v. Ray, 116 Wash.2d 531, 547, 806 P.2d 1220 (1991); State v. Camarillo, 115 Wash.2d 60, 70, 794 P.2d 850 (1990); State v. Ferguson, 100 Wash.2d 131, 133-34, 667 P.2d 68 (1983). JT was a principal witness to Foster's sexual contact with BS in Port Susan; her testimony describing what she had seen was not rendered inadmissible because she also briefly related what Foster had done to her on the trip. Cf. State v. Tharp, 96 Wash.2d 591, 594, 637 P.2d 961 (1981) (uncharged crimes forming unbroken sequence of incidents tied to defendant necessary to provide full story relating to current charge). Defense counsel's *573 failure to object to the Port Susan testimony may be viewed as a tactical decision. Foster testified at length on direct examination about the incident and the fact that he pleaded guilty. His testimony supported the defense's position that Foster accepts responsibility for his actions whenever he acts inappropriately, and he is therefore credible in denying the current charges.
Foster also contends that trial counsel should have objected to testimony concerning his other abusive behavior. ER 404(b) provides that
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evidence can be admitted under this rule when (1) it is "relevant and necessary to prove an essential ingredient of the crime charged" and (2) its probative value outweighs its potential for prejudice. State v. Saltarelli, 98 Wash.2d 358, 362, 655 P.2d 697 (1982). BS testified that Foster threatened on several occasions to harm her and those close to her if she ever told about the sexual abuse. BS's testimony describing why she believed Foster was capable of carrying out those threats was relevant to counter the fact that she had not only delayed disclosing the abuse but had denied being abused both times she met with Berliner. If no explanation had been offered as to why Foster succeeded in intimidating BS, his testimony that the acts did not occur may have gained unwarranted credibility. See State v. Wilson, 60 Wash.App. 887, 890, 808 P.2d 754, review denied, 117 Wash.2d 1010, 816 P.2d 1224 (1991). Evidence of Foster's abusive behavior bolstered BS's testimony that she was afraid to disclose the abuse, tending to make the existence of a material fact, that Foster sexually abused her, more probable.
The only evidence of Foster's prior misconduct to which trial counsel arguably should have objected was a reference to an incident in which Jolly found Foster and his cousin naked together in the shower. Even if defense counsel should have objected to this evidence, however, Foster cannot show the required prejudicial effect. There is a liberal practice in the admission of evidence when guilt is determined by the court because in a bench trial, the court is presumed to have considered only admissible evidence and for only proper purposes. In re Harbert, 85 Wash.2d 719, 729, 538 P.2d 1212 (1975); State v. Melton, 63 Wash.App. 63, 68, 817 P.2d 413 (1991), review denied, 118 Wash.2d 1016, 827 P.2d 1011 (1992). There is no prejudice evident here.

SENTENCING
Foster's argument that the trial court erred in ordering community placement is puzzling because at sentencing the court concluded it was not appropriate and no order of community placement appears in the judgment and sentence entered by the court.

PRO SE ISSUES
In his pro se brief, Foster alleges that (1) his counsel at trial was ineffective because he failed to pursue the case after learning Foster could no longer pay him, (2) the State added six counts to the information after Foster refused to plea bargain without conducting additional investigation, and (3) the courtroom should have been closed to spectators because he observed someone who was present during the testimony of certain witnesses speaking with witnesses who had yet to take the stand. These allegations cannot be adequately addressed on the record before this court. They would be more appropriately raised in a personal restraint petition.
Foster also contends that he was not sentenced within 40 days of conviction as required by RCW 9.94A.110. The court found Foster guilty on November 10, 1995. At that time, defense counsel and the prosecuting attorney scheduled the sentencing hearing for January 18, 1994. The hearing was not held until March 24. The record does not explain how or why the date for the hearing was changed. However, Foster does not suggest, and indeed there is no evidence to indicate, that defense counsel opposed the *574 postponement or that Foster was prejudiced by the delay.
Foster next asserts that the State presented testimony in violation of the psychologist/client privilege. After Foster pleaded guilty to incest in 1981, Roger Wolfe, M.A., who specializes in sex offender treatment at Northwest Treatment Associates, evaluated Foster to determine whether community treatment was an appropriate sentencing option. Wolfe also testified at the current sentencing hearing. He based his testimony on review of his notes from the 1981 evaluation, reports from several other professionals Foster had seen for evaluation and treatment, police reports, and presentencing information from Foster's Department of Corrections file. Wolfe had not reevaluated Foster in person. Based on the materials reviewed, Wolfe concluded that Foster was not amenable to treatment.
Foster contends that information Wolfe relied upon in reaching this conclusion was subject to the psychologist/client privilege and that any incriminating statements he may have made to professionals were protected by the Fifth Amendment. Not all examinations and interviews necessarily present Fifth Amendment concerns, however. See State v. Ammons, 105 Wash.2d 175, 185, 713 P.2d 719, 718 P.2d 796 (1986), cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). Because Foster did not object to Wolfe's testimony on these grounds below, the trial court was deprived of the opportunity to elicit information as to whether Foster had been promised confidentiality or whether he reasonably believed that his disclosures would be kept in confidence. Cf. State v. Post, 118 Wash.2d 596, 612-13, 826 P.2d 172, 837 P.2d 599 (1992) (when defendant objected to evidence, trial court determined whether, viewed objectively, patient/defendant had intended the communications to be confidential). As a result, there is no evidence in the record indicating that Foster reasonably expected the prior reports to be confidential. To the contrary, Foster objected at sentencing to some of the information contained in the Department of Corrections file, and, consequently, Wolfe did not consider that information. Foster did not object at sentencing to the information he challenges on appeal. We therefore presume that he had no expectation of confidentiality in the materials upon which Wolfe relied.
Foster also raises this issue in connection with his claim of ineffective assistance of counsel. While the issue cannot be resolved on the record before us, we do not foreclose consideration of this issue if properly presented in a personal restraint petition.
Foster next asserts that the court was unaware of his willingness to participate in treatment and of the fact that an intake assessment conducted by the Twin Pivers Sex Offender Treatment Program (SOTP) found him amenable to treatment. Thus, he contends, the trial court erred in concluding that he was not amenable to treatment. The record suggests that the trial court had the relevant information before it, however. Wolfe testified that Foster had applied for and been rejected from the sex offender treatment program at Twin Rivers. On recross examination, Wolfe acknowledged that the sentence Foster received for his most recent conviction was not long enough to qualify him for the SOTP. Foster addressed the court at sentencing, explaining that he had been scheduled to start the SOTP, but due to absences from Twin Rivers related to the current case, he was unable to start the program and upon his return he had too little time left to serve to qualify for it. We find no error in the court's conclusion that Foster was not amenable to treatment.
We last consider Foster's contention that the trial court erred in ordering his sentences to run consecutively. The trial court found that the five counts of which Foster was convicted corresponded to sexual contact with BS when she was nine, ten, eleven, twelve, and thirteen years old, respectively, and that each count involved multiple incidents of abuse against BS. Foster does not challenge this finding. Because each count encompassed multiple acts of sexual contact with BS, the consecutive sentence was authorized by RCW 9.94A.400(1)(a) and 9.94A.390(2)(f).
The portion of the judgment and sentence ordering Foster to undergo HIV testing is *575 vacated. The judgment and sentence are affirmed in all other respects. They are remanded solely for correction of the clerical error.
AGID and COX, JJ., concur.
NOTES
[1] Child molestation in the first degree encompassed "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." Former RCW 9A.44.083(1). Child molestation in the second degree was defined as "sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." Former RCW 9A.44.086(1).
[2] This citation presumably refers to RCW 9A.44.100(1)(a).
[3] The parties referred to this charge as both indecent exposure and public indecency.