# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| AIR SERV CORPORATION, | ) | No. 74928-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLIGHT SERVICES & SYSTEMS, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 30, 2017 |
| | ) | |

VERELLEN, C.J. — In 2012, Air Serv Corporation filed a complaint against Flight

Services & Systems, Inc. (FSS) for unjust enrichment and quantum meruit, among other

claims. After a bench trial, the trial court entered judgment for Air Serv for $200,000,

including attorney fees, and ordered an additional amount of $35,000 as sanctions for

violations of various court rules. FSS appealed (Air Serv I), arguing that the trial court

applied the wrong measure of damages, improperly excluded evidence, and erred in

imposing an attorney fees award and sanctions.[1] Because this court could not discern

from the trial court's findings the basis for the award, it remanded for further findings on

the existing record. Specifically, this court directed the trial court to "articulate the

specific measure of damages and make precise findings supporting such damages,

---

[1] Air Serv Corp. v. Flight Servs. & Sys., Inc., No. 71103-2-I, slip op. at 1 (Wash. Ct. App. Apr. 6, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/711032.pdf, review denied, 184 Wn.2d 1006 (Sep. 30, 2015) (Air Serv I).

whether under a market value, modified disgorgement of profit, or some other 'rare circumstances' measure of the value of services appropriate based upon total circumstances."[2]

On remand, the trial court clarified, "[A]s the services provided by Air Serv were unique in nature and neither party established a 'market value [of] the services rendered,' the court has determined that the measure of recovery it will apply is the 'disgorgement of the profit defendant received as a result of the services rendered.'"[3] The court concluded FSS owed Air Serv $143,723.26 for its services. The court also awarded Air Serv $115,323.22 as terms and sanctions, for a total judgment award of $259,046.48.

FSS appeals the trial court's decision on remand. Their primary argument is that disgorgement of profit is not an applicable theory of damages. But disgorgement of profit is a viable remedy for unjust enrichment when there is no market value available. Given that neither party established a market value for Air Serv's services and FSS provided incomplete discovery regarding costs and fixed fees, we conclude the trial court did not abuse its discretion in computing damages.

FSS's other claims also fail. Therefore, we affirm.

## FACTS

The facts of this case were summarized in Air Serv I:

> On April 14, 2011, FSS entered into a contract with Delta Airlines to provide cabin cleaning services at Seattle-Tacoma airport for Delta's domestic and international flights. FSS was to begin providing these services on May 17, 2011. In order to provide cleaning services for

---

[2] Id. at 10.

[3] Clerk's Papers (CP) at 2523 (quoting id. at 4).

international flights, FSS was required to obtain a federal compliance agreement from the United States Department of Agriculture.

Sometime in May 2011, the United States Customs and Border Protection (CBP) notified Delta that FSS would not be permitted to board Delta's international flights because it did not have the required compliance agreement. CBP identified other companies that were in compliance, including Air Serv. Because FSS was unable to obtain a compliance agreement for at least another six to eight weeks and Delta had an immediate need for cleaning services on international flights beginning the next day, Delta consulted with CBP about having Air Serv provide temporary services until FSS obtained its own compliance agreement.

CBP agreed to allow FSS to provide the cleaning services without the compliance agreement so long as Air Serv supervised those services. Specifically, Air Serv would be required to supervise the handling and transfer of trash collected on the plane. Air Serv agreed to do so, and beginning on May 28, 2011, provided supervision of FSS's handling and transfer of the trash during cleanings.

Approximately two weeks later, Air Serv proposed to FSS a rate of $250 per plane for its services. After FSS objected to this amount, Air Serv proposed a lower rate of $175 per plane. Beginning in July 2011, Air Serv sent invoices to FSS at this price, for a total of 476 flights that were serviced during the temporary arrangement.

FSS did not pay the invoices, but Air Serv continued to provide the temporary services until FSS obtained its federal compliance agreement in September 2011. On September 2, 2011, Air Serv ceased providing its supervisory services to FSS. FSS did not pay the invoices, which totaled $83,300. On September 20, 2011, FSS disputed the amount on the invoices and informed Air Serv that it would only pay a total of $3,511.10, based upon an hourly rate of $14.05.

In January 2012, Air Serv filed a complaint against [FSS] seeking damages for breach of contract, consumer protection act violations, unjust enrichment, and quantum meruit. The trial court dismissed the consumer protection and breach of contract claims on summary judgment, finding that there was no meeting of the minds on the price for the services rendered by Air Serv. But the trial court granted partial summary judgment for Air Serv for liability under the unjust enrichment and quantum meruit theories, with damages to be proven at trial.

. . . .

3

At trial, Air Serv presented evidence of how it arrived at the $175 price per plane that was invoiced but ultimately rejected by FSS. Toan Nguyen, who handled pricing for Air Serv, testified that the pricing was based on labor, equipment, associated profit, and liability, i.e., the financial and operational risk involved in allowing FSS to use its compliance agreement. Nguyen explained the breakdown of the first quote of $250 per plane as $60 for labor of three people, $30 profit, $10 for equipment and fuel maintenance, and $150 for risk of liability. He further testified that he lowered the price to $175 per plane to take into account that Air Serv would be providing supervisory services rather than actual cleaning based upon $20 for labor, no costs for equipment or fuel, a reduced price of $5 for profit, and $150 for liability risk. Air Serv also presented testimony, and the trial court found, that FSS told Air Serv it would pay the $175 per plane charge and that Air Serv relied upon that representation.

In support of its unjust enrichment theory based on disgorgement of profits, Air Serv presented evidence of reviews FSS received on the Delta contract during the period of time that Air Serv performed work for FSS. Air Serv presented invoices that FSS sent to Delta showing total charges for all services, domestic and international, of approximately $414,000. The charges for services itemized as "international" flights on these invoices totaled $77,730.50. The invoices also listed additional charges, including "fixed fees." These were likely for services that were provided for both international and domestic flights but were not parsed out by FSS, despite discovery requests to do so.

Air Serv also acknowledged in its trial brief, in its response to the half-time motion, and in closing argument that disgorgement of profits FSS received from its contract with Delta would normally require reducing the gross revenues by any "costs" FSS incurred to generate those revenues. Because FSS had refused to provide any cost information in interrogatory answers or document production and refused to arrange for a speaking agent able to address that topic, the court entered an order compelling discovery on costs. FSS did not provide any information on costs and instead took the position that it did not maintain cost information specific to the Seattle-Tacoma operation. As a result, no evidence of costs was produced in discovery or presented at trial.[4]

The trial court entered findings and conclusions "[q]uantifying the undisputed services" and concluding that FSS owed Air Serv "the reduced amount of $175/flight or $83,300 along with all associated attorney's fees and costs under both theories of

---

[4] Air Serv I, slip op. at 1-7.

4

quantum meruit and unjust enrichment."[5]  Specifically, the court awarded Air Serv $116,700 in attorney fees "as terms," for a total judgment award of $200,000.[6]  The court ordered $35,000 in additional sanctions against FSS based on "numerous violations of the rules of the Court, including, but not limited to CR 11, CR 26(g), CR 37(b) & (d), CR 56(g) and the court's local rules."[7]

In Air Serv I, FSS argued the trial court applied the wrong measure of damages. This court concluded the trial court's findings were inadequate for review of FSS's claim.[8]  "Because the trial court did not identify a precise theory of damages or make findings of a reasonable value of the services or how the court arrived at such a reasonable value of the services," this court remanded for additional findings.[9]  This court directed the trial court to "articulate the specific measure of damages and make precise findings supporting such damages, whether under a market value, modified disgorgement of profit, or some other 'rare circumstances' measure of the value of services appropriate based upon total circumstances."[10]

This court further concluded the trial court's findings lacked the specificity required to support the terms and sanctions award.[11]  Therefore, this court remanded "to allow the court to make additional findings on the existing record to determine an

---

[5] CP at 2291.

[6] CP at 2407, 2409-10.

[7] CP at 2410.

[8] Air Serv I, slip op. at 10.

[9] Id.

[10] Id.

[11] Id.

appropriate award."[12] This court noted, "[I]n addition to findings that the hourly rates and itemized time are reasonable, the lodestar analysis should include more details supporting any award of attorney fees as terms."[13]

On remand, Air Serv requested both parties be allowed to provide proposed amended findings of fact and conclusions of law consistent with this court's opinion.[14] On January 20, 2016, the trial court granted Air Serv's motion and allowed both parties to submit proposed amended findings of fact and conclusions of law.[15] Air Serv timely submitted its proposed amended findings of fact and conclusions of law, while FSS elected to not submit anything further.[16] On February 19, 2016, the trial court entered its amended findings of fact, conclusions of law and order for sanctions.[17]

The trial court clarified, "[A]s the services provided by Air Serv were unique in nature and neither party established a 'market value [of] the services rendered,' the court has determined that the measure of recovery it will apply is the 'disgorgement of the profit defendant received as a result of the services rendered.'"[18] The trial court detailed how it calculated the profit FSS earned as a result of Air Serv's services and

---

[12] Id. at 13.

[13] Id.

[14] CP at 2458-62.

[15] CP at 2520-21.

[16] CP at 2484 ("The parties already provided this Court with their proposed findings of fact and conclusions of law after trial, which the Court reviewed and considered before issuing its final findings of fact and conclusions of law [ ]. A new round of proposed findings and conclusions would serve no further beneficial purpose.").

[17] CP at 2522-38.

[18] CP at 2523 (quoting Air Serv I, slip op. at 4).

concluded FSS owed Air Serv $143,723.26.[19] The trial court also provided more detailed findings associated with the award of sanctions and attorney fees.[20] The court awarded Air Serv $115,323.22 as terms and sanctions, for a total judgment award of $259,046.48.[21]

FSS appeals the trial court's amended findings of fact and conclusions of law.

## ANALYSIS

### I. LEGAL CHALLENGES TO DAMAGES AWARD

FSS asserts a broad based challenge to the trial court's award of damages. FSS's primary argument is the trial court erred in applying a disgorgement of profit theory of damages under unjust enrichment. FSS claims a disgorgement of profit is not an applicable theory of damages. But this court already ruled in Air Serv I that a disgorgement of profit is a viable theory of damages for unjust enrichment.[22] FSS makes no argument under RAP 2.5(c) that this court should reconsider its prior opinion, and we find no reason to do so.

In Air Serv I, this court explained that the measure of recovery for unjust enrichment to a faultless claimant is either "(1) 'the amount which the benefit conferred would have cost the defendant had it obtained the benefit from some other person in plaintiff's position,' or (2) 'the extent to which the other party's property has been increased in value or his other interests advanced.'"[23] "When services have been

---

[19] CP at 2527-30.

[20] CP at 2530-36.

[21] CP at 2537, 2567-69.

[22] Air Serv I, slip op. at 10.

[23] Id. at 4 (quoting Young v. Young, 164 Wn.2d 477, 487, 191 P.3d 1258 (2008)) (internal quotation marks omitted).

provided, the first measure is typically represented by the market value of the services rendered, while the second measure involves disgorgement of the profit the defendant received as a result of the services rendered."[24]

The Air Serv I court noted that the parties had "presented limited evidence to the trial court" to establish the measure of recovery for unjust enrichment.[25]

> On market value, Air Serv took the position that the services were unique and that there was no market. In its discovery responses, FSS pointed to a single example of a "subcontractor" for cleaning services and alleged a custom and practice in the industry. But in depositions, FSS's designated speaking agent Robert P. Weitzel could not recall the names of any companies that provided such services in the past and could not recall or was not aware of the responses of other companies to FSS's inquiries to provide the service Air Serv provided. While Weitzel stated he was aware of one prior occasion when FSS was involved in a similar arrangement long ago, he could not recall which company was involved or the price for such services. Because FSS did not provide discovery related to a market value, the trial court granted Air Serv's motion in limine to preclude FSS from offering evidence of market value.[26]

The Air Serv I court further noted that the trial court found

- "FSS received $77,730.50 in direct revenue due to Air Serv's actions from June to August 2011, and a total amount of $77,439.09 for fixed fees."[27]

- "[T]otal revenues (domestic and international) FSS received from Delta were over $400,000."[28]

- "FSS intentionally failed to provide information regarding costs."[29]

---

[24] Id. (citing Young, 164 Wn.2d at 487-88).

[25] Id. at 5.

[26] Id.

[27] Id. at 8.

[28] Id.

[29] Id.

But the trial court "made no finding or conclusion that because FSS intentionally withheld cost information, these revenues were the best the trial court could do to arrive at a disgorgement figure."[30] Specifically,

- "There was no finding that $77,730.50, the full amount of direct revenue from international flights supervised by Air Serv from June through August, was a reasonable figure for revenue for all flights serviced (rounding off to exclude 15 additional flights in May and 10 additional flights in September)."[31]

- "There was no finding of what portion of the fixed fees was properly allocated to work supervised by Air Serv and on what basis."[32]

- "There was no finding and no direct evidence that FSS was in any real jeopardy of losing its entire contract with Delta if it was unable to clean the international flights so that $400,000 total gross revenue paid by Delta has any significance in a disgorgement of profits theory."[33]

This court acknowledged "the parties provided the trial court with limited information regarding value and profit," but concluded the trial court "must articulate the specific measure of damages and make precise findings supporting such damages."[34]

On remand, the trial court did exactly that. The trial court clarified, "[A]s the services provided by Air Serv were unique in nature and neither party established a 'market value [of] the services rendered,' the court has determined that the measure of recovery it will apply is the 'disgorgement of the profit defendant received as a result of the services rendered."[35] The trial court made the following additional findings:

---

[30] Id.

[31] Id.

[32] Id.

[33] Id.

[34] Id. at 10.

[35] CP at 2523 (quoting id. at 4).

9

10. Without Air Serv, or another authorized vendor's supervision, FSS would have been unable to provide cleaning services to any of Delta's international flights at SeaTac Airport. FSS was unable to identify any other authorized vendor that was willing to assist it by providing supervision for any of the Delta flights. So without Air Serv's services, FSS would have been unable to service the international flights for Delta. The court finds that disgorging the profit FSS received related to Air Serv's services on the 476 flights provides for an appropriate remedy for FSS's unjust enrichment.

11. The court further finds that FSS purposely acted to deceive Air Serv. FSS made numerous representations to Air Serv that it was willing to pay Air Serv for its services, but the record shows that FSS never intended to uphold these representations. FSS was not an innocent recipient of Air Serv's services. Thus, the disgorgement of all of FSS's gains related to Air Serv's services is also appropriate due to FSS's purposeful conduct. Therefore the court will not allow FSS to keep any profit it received relating to Air Serv's services.

12. Air Serv requested FSS to provide information sufficient to demonstrate its profit from the flights Air Serv serviced. . . . FSS refused to provide [revenue and cost] information even after this court compelled FSS to provide information relating to the revenues and costs associated with FSS's cabin cleaning services provided to Delta. . . .

13. FSS's failure to provide additional information related to its costs and revenues was intentional. . . . The court finds FSS intentionally withheld this information and failed to abide by this court's order compelling such information. Due to FSS's violation of this court's order, the court will evaluate the evidence re revenue and costs in the light most favorable to Air Serv.

. . . .

16. Although it is not entirely clear from the invoices from FSS to Delta how much direct revenue FSS received due to Air Serv's efforts on flights in May 2011, FSS admitted it could have provided this requested information in its CR 30(b)(6) deposition. Due to FSS's intentional refusal to detail this information, the court will infer that each flight serviced by FSS in May 2011 provided FSS direct revenue of $145.60. Air Serv assisted on 15 flights in May 2011, so the direct revenue received by FSS due to Air Serv's services is $2,184.

17. Although it is not entirely clear from the invoices from FSS to Delta how much direct revenue FSS received due to Air Serv's efforts on flights in September 2011, FSS admitted it could have provided this

requested information in its CR 30(b)(6) deposition. Due to FSS's intentional refusal to detail this information, the court will infer that each flight serviced by FSS in [September] of 2011 provided FSS direct revenue of $199.20. Air Serv assisted on 10 flights in [September] 2011, so the direct revenue received by FSS due to Air Serv's services is $1,992.00.

18. In total, this court finds FSS received $81,906.50 in direct revenue due to the services Air Serv provided on international flights.

19. FSS received additional revenue due to Air Serv's services detailed on the invoices as 'fixed fees.' FSS admitted that this revenue was in part due to the international flights serviced by Air Serv. FSS however failed to provide any indication of what amount of these 'fixed fees' were due to domestic flights.

20. FSS intentionally failed to provide Air Serv information sufficient to determine what percentage of the 'fixed fees' were attributable to the domestic flights. As FSS failed to provide this information, although compelled by court order to do so, the court will not make any assumptions as to what extent the 'fixed fees' include revenue from domestic flights. Instead as an appropriate sanction, the court will infer that all of the revenue due to the 'fixed fees' was paid to FSS due to the services on the international flights.

. . . .

24. In total, the court finds FSS received $61,816.76 in 'fixed fees' while relying on the services provided by Air Serv to be able to clean international flights.

25. FSS failed to provide any evidence of costs, although it was ordered to do so by the court. The court finds FSS's failure to abide by the court's order intentional and will not deduct any amount from the revenue amounts in calculating profit.

26. The profit FSS received due to Air Serv's services is calculated by adding the amount of direct revenue ($81,906.50) and 'fixed fees' attributable to Air Serv's efforts ($61,816.76) minus the costs that FSS demonstrated at trial (0.00). Accordingly, the court orders defendant to pay plaintiff $143,723.26.[36]

---

[36] CP at 2526-30.

First, FSS argues the "trial court committed legal error by changing the measure and amount of damages on remand."[37] FSS claims this "[c]ourt did not remand to have the trial court come up with another measure and amount of damages."[38] FSS distorts this court's opinion in Air Serv I, which expressly provided the trial court could apply a disgorgement of profit theory of damages.[39] Here, the amended findings support a disgorgement of profit theory of recovery for unjust enrichment. The findings illustrate why the trial court applied the Air Serv I court's accepted theory of damages and why the trial court fashioned the award in the manner it did—based on the limited discovery provided by FSS. Therefore, FSS's argument fails.

Second, FSS asserts the "reasonable value measure used for the original judgment is clear from the record."[40] But the Air Serv I court remanded the case expressly because the court could not "discern from the trial court's findings the basis for the award."[41] "Specifically, other than reciting that the issue was to determine the reasonable value of services rendered by Air Serv to FSS, the court did not identify any particular theory of damages."[42] On remand, the trial court properly made findings regarding lack of market value.

Third, FSS argues Air Serv's "resurrected claim on remand of disgorgement of gross revenues is barred by claim splitting."[43] We disagree. Air Serv advanced a

---

[37] Appellant's Br. at 20.

[38] Id.

[39] Air Serv I, slip op at 10.

[40] Appellant's Br. at 21.

[41] Air Serv I, slip op. at 1.

[42] Id. at 7.

[43] Appellant's Br. at 22.

12

disgorgement of profit theory of recovery for unjust enrichment all along.[44] For the same reason, we reject FSS's argument that the "[e]llection of remedies doctrine bars [Air Serv] from switching to its new disgorgement theory."[45] Contrary to FSS's contention, Air Serv did not "switch theories after the appeal."[46]

Fourth, FSS argues "[j]udicial estoppel prevents [Air Serv] from changing its theory to disgorgement of gross revenues."[47] "'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'"[48] Here, Air Serv consistently advanced its unjust enrichment theory based on disgorgement. Therefore, judicial estoppel does not apply.

Fifth, FSS asserts the "trial court erred by not applying established legal principles for determining the proper measure of damages."[49] FSS cites to several cases recognizing that trial court judges often determine damages based on a market value of the services provided. But here, it was already determined that no "market rate" was established during trial.[50] As this court explained in Air Serv I, "On market value, Air Serv took the position that the services were unique and that there was no

---

[44] See Air Serv I, slip op. at 6.

[45] Appellant's Br. at 23.

[46] Id. at 24.

[47] Id.

[48] Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006).

[49] Appellant's Br. at 25.

[50] Air Serv I, slip op. at 5, 9.

market."[51] FSS, on the other hand, "did not provide discovery related to a market value."[52] Therefore, "the trial court granted Air Serv's motion in limine to preclude FSS from offering evidence of market value."[53] FSS already challenged the trial court's ruling precluding it from offering evidence of market value in Air Serv I, and this court determined FSS's challenge lacked merit.[54] "FSS did not make an offer of proof of evidence relating to industry standard or a market rate. Indeed, the record reveals that the claimed 'industry standard' was based on statements in declarations submitted by FSS that FSS was later unable to verify."[55]

> During oral argument on the motion in limine, the court asked counsel for FSS if there was going to be testimony on this issue, to which counsel responded, "I don't recall any testimony on market rate." The court again asked what evidence FSS had relating to industry standards or market rate, and counsel responded, "I don't think anybody has testified to industry standards or market rate," at which point the court noted, "Then you're . . . conceding."[56]

Because there was no evidence of a market value, the trial court had no basis to award market value damages.

Sixth, FSS argues the trial court erred by imposing a "disgorgement of total gross revenues without deduction for expenses and costs as an apparent sanction."[57] But the trial court expressly found:

---

[51] Id. at 5.

[52] Id.

[53] Id.

[54] Id. n.11.

[55] Id. at 16-17.

[56] Id. at 16 n.39 (quoting Report of Proceedings (RP) (June 25, 2013) at 267, 269).

[57] Appellant's Br. at 33.

Although FSS's counsel maintained at trial that FSS did not have cost information and FSS responded evasively in written discovery, during FSS's deposition FSS admitted it did have information sufficient to show its costs and could further detail its revenue associated with specific dates the airplanes were serviced. The court finds FSS intentionally withheld this information and failed to abide by this court's order compelling such information.[58]

To the extent FSS argues that the trial court failed to engage in a proper Burnet v. Spokane Ambulance[59] inquiry in finding FSS failed to provide cost information, the trial court's original findings included: "FSS's failure to provide information related to its costs and revenues was intentional."[60] And FSS failed to raise this argument before this court in Air Serv I[61] or before the trial court on remand. Because the remand was limited to the existing record and the issue could have been resolved on the first appeal, we decline to address it now.

FSS also argues the trial court erred in allocating 100 percent of fixed fees to international flights. FSS claims the court disregarded testimony from Air Serv that "only 60-65% of fixed fees could be allocated to international planes."[62] But FSS makes no showing that the trial court improperly disregarded Air Serv's testimony. Rather, the trial court expressly found:

> 20. FSS intentionally failed to provide Air Serv information sufficient to determine what percentage of the "fixed fees" were attributable to the domestic flights. As FSS failed to provide this

---

[58] CP at 2527.

[59] 131 Wn.2d 484, 933 P.2d 1036 (1997).

[60] CP at 2291 ¶ 12.

[61] In Air Serv I, FSS challenged the trial court's failure "to conduct the inquiry required by Burnet v. Spokane Ambulance before excluding evidence as a discovery sanction" but "challenge[d] only the exclusion of evidence of industry standard and market rate." Air Serv I, slip op. at 13, 16 n.38.

[62] Appellant's Br. at 34.

information, although compelled by court order to do so, the court will not make any assumptions as to what extent the "fixed fees" include revenue from domestic flights. *Instead as an appropriate sanction, the court will infer that all of the revenue due to the "fixed fees" was paid to FSS due to the services on the international flights.*[63]

FSS asserts that damages under unjust enrichment would not normally exceed the amount that would have been gained by contract. This argument fails for several reasons: FSS failed to raise this argument before this court in Air Serv I or before the trial court on remand; FSS cites no authority to support its argument;[64] *Restatement (Third) of Restitution and Unjust Enrichment* § 51 (2011) acknowledges that recovery under unjust enrichment may exceed the amount that would have been gained by contract; and "trial courts have broad discretionary powers to fashion equitable remedies and we review the trial court's consideration of the equities for abuse of discretion."[65]

Here, the trial court had limited options in determining the measure of recovery for unjust enrichment. Given the lack of evidence of market value and FSS's intentional failure to provide discovery of cost information or separate domestic versus international fixed costs, the trial court did not abuse its discretion in focusing on disgorgement of revenues. FSS cannot frustrate the trial court by limiting the information necessary to calculate profit. We conclude it was not an abuse of discretion for the trial court to take into consideration all of these circumstances and impose a disgorgement of "direct

---

[63] CP at 2528 (emphasis added).

[64] "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent research, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

[65] Arzola v. Name Intelligence, Inc., 188 Wn. App. 588, 596, 355 P.3d 286 (2015).

revenue ($81,906.50) and 'fixed fees' attributable to Air Serv's efforts ($61,816.76) minus the costs that FSS demonstrated at trial (0.00)."[66]

Seventh, FSS argues the damages award is "punitive."[67] FSS's argument is based on its misguided belief that it was required to pay too much. Here, the trial court had limited information relating to FSS's profits due to FSS's intentional failure to provide essential information. The fact that FSS's failure to provide information inevitably worked to its detriment does not mean the trial court acted punitively in assessing damages.

Finally, FSS alleges several other legal errors on appeal. They are not compelling. Several of FSS's arguments rely on FSS's incorrect assertion that the trial court used a "reasonable value measure" of recovery in its original judgment. Others are based on FSS's incorrect premise that a disgorgement of profit is an invalid remedy. But as explained above, FSS devotes no argument under RAP 2.5(c) as to why this court should reconsider its opinion in Air Serv I. Because the amended findings of fact and conclusions of law are consistent with the Air Serv I opinion and applicable law, we conclude FSS's legal challenges fail.

## II. "FACTUAL" CHALLENGES TO DAMAGES AWARD

FSS alleges the trial court committed numerous errors of fact in assessing damages. But with the exception of assignment of error 4, FSS fails to identify the specific findings of fact it challenges. FSS therefore failed to comply with RAP 10.3(g), which specifies a "separate assignment of error for each finding of fact a party contends

---

[66] CP at 2529-30 ¶ 26.
[67] Appellant's Br. at 16.

was improperly made must be included with reference to the finding by number."

Moreover, many of FSS's assignments of error couched in terms of factual challenges overlap with the legal challenges already addressed in this opinion, attack the discretionary rulings by the trial court in determining damages, raise arguments rejected in Air Serv I, or are irrelevant to the trial court's award of damages under a disgorgement of profit theory of unjust enrichment.

Where, as here, "a trial court has weighed the evidence in a bench trial, appellate review is limited to determining whether substantial evidence supports its findings of fact and, if so, whether the findings support the trial court's conclusions of law."[68]

> Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true. We review only those findings to which appellants assign error; unchallenged findings are verities on appeal. On appeal, we view the evidence in the light most favorable to the prevailing party and defer to the trial court regarding witness credibility and conflicting testimony.[69]

This court reviews a trial court's award of damages for abuse of discretion.[70]

This court also reviews a trial court's evidentiary rulings for abuse of discretion.[71] A trial court abuses its discretion "only 'on a clear showing' that the court's exercise

---

[68] Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555, 132 P.3d 789 (2006).

[69] Id. at 555-56 (internal citations and footnote omitted).

[70] Staff Builders Home Healthcare, Inc. v. Whitlock, 108 Wn. App. 928, 932, 33 P.3d 424 (2001); see also Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 160 Wn. App. 728, 737, 253 P.3d 101 (2011) ("Mathematical certainty is not required, and a fact finder has discretion to award damages that are within the range of competent evidence in the record.").

[71] Mutual of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 728, 315 P.3d 1143 (2013).

of discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[72]

Assignment of Error 1. FSS argues the trial court erred by finding liability for both unjust enrichment and quantum meruit. If FSS wished to raise this issue, it should have done so in its prior appeal. Here, in the trial court's amended judgment, the court only entered judgment on the unjust enrichment claim.[73]

Assignment of Error 2. FSS argues the trial court erred in denying FSS's motion in limine "and objections concerning [Air Serv]'s untimely disclosure of its disgorgement theory."[74] But the record demonstrates FSS had long been informed that Air Serv intended to seek the benefit conferred on FSS.[75] Therefore, it was not manifestly unreasonable to allow Air Serv to pursue a disgorgement of profit theory.[76]

---

[72] T.S. v. Boy Scouts of America, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[73] Compare CP at 2568 ¶ 1 with CP at 2410 ¶¶ 1, 2.

[74] Appellant's Br. at 2.

[75] See CP at 5-6 ("44. Air Serv has conferred a benefit upon FSS which FSS knowingly accepted. 45. The circumstances make it unjust for FSS to retain the benefit conferred by Air Serv. 46. Air Serv believes Delta conferred a benefit upon FSS which FSS knowingly accepted and would not have been attained without Air Serv's performance of services. 47. The circumstances make it unjust for FSS to retain the benefit conferred upon it by Delta. 48. FSS should be ordered to pay to Air Serv the benefits it realized from Air Serv's services."; CP at 44 ("FSS has failed to provide any document responsive to document request No. 30 relating to the costs associated with the services it provided Delta. Such information is not only relevant but vital to Air Serv's claim for unjust enrichment."); CP at 353-54 ("FSS did recently produce invoices that it provided Delta, however Air Serv is still unable to derive the amount FSS benefitted due to Air Serv's services. Moreover, FSS has not provided a single document from which Air Serv can determine FSS's costs in providing services. Of course, both FSS's revenues and costs are relevant to 'value of the benefit [it] retained.'").

[76] See Mutual of Enumclaw, 178 Wn. App. at 728 ("Therefore, we will overturn the trial court's ruling on the admissibility of evidence only if its decision [is] manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons.").

Assignment of Error 3. FSS argues the trial court erred in finding Air Serv's services were unique. We disagree. There is substantial evidence to support that the services provided by Air Serv were unique.[77]

Assignment of Error 4. FSS argues the trial court erred in finding FSS never made any payment to Air Serv for its services.[78] But in FSS's answer to Air Serv's complaint, it admitted it never paid Air Serv for its services.[79] FSS's argument fails.

Assignment of Error 5. FSS argues the trial court erred in finding Air Serv "relied on a representation it would be paid in full and FSS deliberately misled" Air Serv.[80] But Air Serv's general manager testified that FSS "assured me . . . we would be paid in full."[81] Regardless, this finding is immaterial to the trial court's award of damages for unjust enrichment.[82]

---

[77] Air Serv's vice president of finance testified that "the only concern we had was liability. And because of, again, the potential of the $250,000 fine, as well as revocation of our license. And based on the fact that FSS was willing to begin servicing international aircraft without that compliance agreement, we were very nervous that they would . . . break the law, have improper procedures. And we, being the holders of the license, were 100 percent at risk of any and all penalties associated with those violations." RP (June 24, 2013) at 82. Air Serv's general manager Gilbert Green, who testified that he had been in the aviation industry nearly 38 years, testified that he was first contacted regarding FSS not having a compliance agreement when "the director of Delta Airlines . . . called . . . stating that would it be possible for Air Serv to assist FSS in a manner that I had not been familiar with." RP (June 25, 2013) at 273. When asked whether Green, in his experience as general manager, had ever heard of another company working as a subcontractor under Air Serv's compliance agreement, Green testified he had "[n]ever heard of such a thing." RP (June 25, 2013) at 274.

[78] See CP at 2526 ¶ 6.

[79] See CP at 4 ("27. FSS has not paid Air Serv for any of its services.") and CP at 33 ("27. Admit.").

[80] Appellant's Br. at 3.

[81] RP (June 25, 2013) at 284.

[82] See Arzola, 188 Wn. App. at 596 (the trial court has broad discretionary authority to fashion equitable remedies).

Assignment of Error 6. FSS argues the trial court erred "in finding FSS did not have access to alternative vendors and that it 'refused' to provide any cost information" to Air Serv.[83] But FSS provided no evidence that any other vendor would agree to provide the services Air Serv performed. Indeed, FSS admitted it discussed attaining the services performed by Air Serv with other compliant companies, but it was unable to provide any price that any other company ever has charged for the services at issue.[84] There is sufficient evidence that FSS failed to provide cost information as ordered by the trial court and later acknowledged it had cost information.

Assignment of Error 7. FSS argues the trial court erred in its computation of FSS's "total (gross) direct revenues of $81,906.50."[85] But this court already recognized that the record reflects FSS received $77,730.50 in direct revenue for the flights between June and August.[86] FSS could have provided information to determine the amount of revenue it received for the flights in May and September, but chose not to.[87] Therefore, it was not manifestly unreasonable for the trial court to engage in such an analysis of revenues on these facts.

Assignment of Error 8. FSS argues the trial court erred in its computation of FSS's "total (gross) fixed fees of $61,816.76 for domestic and international flights and then allocating 100% to international flights."[88] We conclude the trial court's

---

[83] Appellant's Br. at 3.

[84] CP at 1678-79.

[85] Appellant's Br. at 3.

[86] Air Serv I, slip op. at 8.

[87] See CP at 2527-28.

[88] Appellant's Br. at 3.

21

determination that the fixed fees be attributed to the international flights was not made on untenable grounds. FSS admitted the fixed fees included revenues from international flights, but failed to provide any estimate as to what portion of those revenues were received due to domestic flights, despite being ordered to do so.

Assignment of Error 9. FSS argues the trial court erred in its computation of FSS's "total gross revenues of $144,723.26 and then wrongfully awarding 100% to [Air Serv] without deduction for any costs and expenses."[89] But as noted above, FSS presented no evidence to the trial court that it incurred any costs, and the trial court found this failure to provide cost information intentional. Indeed, in Air Serv I, this court indicated that FSS's intentional withholding of cost information could be a reason for the trial court to conclude that no costs should be included in the profit calculation.[90] We conclude it was not manifestly unreasonable for the trial court to engage in such an analysis of damages on these facts.

### III. CHALLENGES TO SANCTION AWARD

FSS argues the trial court erred in awarding monetary sanctions pursuant to CR 26(g), CR 37(b), (d), CR 56(g), and local court rules "without specifically identifying any objectionable conduct or deficiencies."[91] The imposition and amount of sanctions are matters within the broad discretion of the trial court.[92] "If an appellate panel cannot ascertain what reasons prompted a trial court's ruling, it is impossible to determine

---

[89] Appellant's Br. at 3.

[90] See Air Serv I, slip op. at 8-9.

[91] Appellant's Br. at 49.

[92] Cascade Brigade v. Econ. Dev. Bd. for Tacoma-Pierce County, 61 Wn. App. 615, 619, 811 P.2d 697 (1991).

whether the ruling is based on untenable grounds or is manifestly unreasonable."[93] Here, however, a plain reading of the trial court's order on remand reveals the trial court's reasoning for imposing sanctions and demonstrates that the trial court followed the Air Serv I court's direction to provide more specificity in the findings leading to the award of sanctions.

First, the trial court detailed the documents filed in violation of CR 11 and described the specific deficiencies of each document.[94] Second, the court specified how FSS failed to obey the trial court's discovery order.[95] Third, the court specified the topics that FSS failed to prepare for in its deposition.[96] Fourth, the court identified the improper certification of discovery responses and explained its basis for determining how FSS and/or its counsel knew the responses to be false.[97] Fifth, the court specified which declarations filed by FSS in support of its summary judgment motion were made in bad faith.[98] Sixth, the court detailed that statements made regarding the whereabouts of a certain witness and statements made regarding prior proceedings were either inaccurate or misleading.[99] Finally, the court explained precisely how FSS violated each local court rule.[100]

---

[93] Dexter v. Spokane County Health Dist., 76 Wn. App. 372, 377, 884 P.2d 1353 (1994).

[94] CP at 2530-33 ¶ 27.

[95] CP at 2533 ¶ 28.

[96] CP at 2533-34 ¶ 29.

[97] CP at 2534 ¶ 30.

[98] CP at 2534-35 ¶ 31.

[99] CP at 2535 ¶ 32.

[100] CP at 2535-36 ¶ 33.

Similarly, the record supports numerous FSS discovery violations. First, FSS failed to submit proper supplemental responses and produce documents requested by Air Serv after being ordered by the trial court to do so.[101] Second, FSS failed to prepare for numerous designated topics at its deposition.[102] The trial court recognized FSS's failure to come prepared to its deposition and ordered FSS to submit to another deposition, which FSS refused to attend.[103] Third, FSS and its counsel violated CR 26(g), as the record demonstrates FSS and its counsel knew or should have known that their verifications to discovery responses were in violation of the rule.[104] Fourth, FSS witness John Kim admitted at trial that his previously filed declaration contained false statements, and he provided testimony to demonstrate that the declaration of FSS witness Robert P. Weitzel was misleading.[105] Therefore, substantial evidence supports the trial court's sanctions pursuant to CR 56(g). Finally, the record contains substantial evidence to support the finding that FSS failed to comply with the trial court's local rules, which FSS does not challenge on appeal.[106]

FSS also argues "sanctions are not permitted here since [Air Serv] failed to provide advance notice to FSS of its intent to seek sanctions" pursuant to CR 26(i).[107]

---

[101] See CP at 359-61,1614-18, 2275-84, 2296-98, 2303-04.

[102] See CP at 2295-96, 2303.

[103] See CP at 1537.

[104] See CP at 359, 2295, 2304.

[105] RP (June 24, 2013) at 242-43, 248-49; see also CP at 2304-05.

[106] See CP at 2299-300; see also Demelash v. Ross Stores, Inc., 105 Wn. App. 508, 527, 20 P.3d 447 (2001) ("We generally will not review an issue, theory or argument not presented at the trial court level. The purpose of this rule is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials." (citation omitted)).

[107] Appellant's Br. at 58.

24

Because FSS failed to raise this issue before the trial court, we decline to consider it. Regardless, Air Serv did provide FSS notice of many of its violations.[108]

Finally, FSS claims the trial court did not conduct a lodestar analysis in assessing attorney fees and costs. Because the amended findings reflect that the trial court calculated a lodestar analysis, FSS's claim fails.

## IV. BIAS

As in Air Serv I, FSS argues the trial judge exhibited bias and therefore, if this court remands, it should be to a new judge.[109] But remand is not appropriate, and FSS fails to establish bias. "Litigants 'must submit proof of actual or perceived bias to support an appearance of impartiality claim.'"[110]

## V. APPELLATE COSTS

Air Serv requests an award of attorney fees and costs on appeal.[111] Air Serv argues this court "should award Air Serv its fees and costs as FSS appeals the trial court's award of fees on issues relating to discovery."[112] Air Serv relies on Washington Motorsports Limited Partnership v. Spokane Raceway Park, Inc.[113] But in Washington Motorsports, "the sole reason" for the appeal was "the discovery violation that led to the

---

[108] See CP at 366-67, 1614-15; RP (June 25, 2013) at 378-85.

[109] See Air Serv I, slip op. at 17.

[110] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 154, 317 P.3d 1074 (2014) (quoting Magana v. Hyundai Motor Am., 141 Wn. App. 495, 523, 170 P.3d 1165 (2007), rev'd on other grounds, 167 Wn.2d 570, 220 P.3d 191 (2009)).

[111] See RAP 18.1.

[112] Respondent's Br. at 48.

[113] 168 Wn. App. 710, 282 P.3d 1107 (2012).

sanction of attorney fees against counsel."[114]  Here, the discovery sanction was not "the sole reason" for FSS's appeal.

Air Serv also requests an award of attorney fees under RAP 18.9 for a frivolous appeal.  An appeal is frivolous where it presents no debatable issues or legitimate arguments for an extension of law.[115]  While FSS presents several issues on appeal that are not supported by the facts or the law, it also presented some debatable issues. Accordingly, we conclude Air Serv is not entitled to attorney fees and costs on appeal.

Affirmed.

WE CONCUR:

Trickey, J

---

[114] Id. at 719.

[115] Harrington v. Pailthorp, 67 Wn. App. 901, 913, 841 P.2d 1258 (1992).

26