[No. 26426-9-II.    Division Two.    October 26, 2001.]

STAFF BUILDERS HOME HEALTHCARE, INC., ET AL., *Respondents*,
v. DEAN A. WHITLOCK, ET AL., *Appellants*.

*Thomas L. Meyer* (of *Meyer Law Office*), for appellants.

*Mark M. Hough* (of *Riddell Williams, P.S.*), for respondents.

BRIDGEWATER, J. — Staff Builders (a home healthcare provider) sued Dean Whitlock (a former employee) for

breaching a noncompetition agreement and violating the Uniform Trade Secrets Act by providing services to a client of Staff Builders. We hold that Staff Builders was entitled to recover their lost profits for damages and recoupment of unjust enrichment; but Staff Builders was not entitled to recover Whitlock's salary because it would have paid that money as wages in any event. We also affirm the award of attorney fees in the trial court and on appeal. We affirm in part and reverse in part.[1]

## FACTS

Dean Whitlock was employed by Staff Builders Home Healthcare, Inc., and Coordinated Healthcare Alliance, Inc., a franchise of Staff Builders.[2] As Staff Builders' employee, he provided home healthcare to Lloyd and Betty Royal. Whitlock did not know the Royals before he started working for Staff Builders. In January 1998, while still caring for the Royals as Staff Builders' employee, Whitlock formed a corporation, Affordable Home Health of Washington, Inc. (Affordable). Affordable's purpose was to provide home healthcare services, much like Staff Builders. Whitlock listed himself as Affordable's sole shareholder and director.

On March 1, 1998, Whitlock terminated his employment with Staff Builders and immediately began providing his services directly to the Royals. The Royals ended their relationship with Staff Builders that same day. Whitlock provided care to the Royals at a rate 25 percent less than Staff Builders.

On March 9, 1998, Staff Builders sent Whitlock a letter,

---

[1] Both parties raised an issue concerning the joint and several liability of Whitlock in a liquidated damages award against the Royals, Staff Builders' former clients. Staff Builders sued the Royals for their breach of contract; a judgment was entered that was joint and several against the Royals and Whitlock. This issue is moot because Staff Builders settled with the Royals and that cause of action is concluded with Whitlock receiving credit against that part of the judgment only that was joint and several with the Royals.

[2] Staff Builders and Coordinated Healthcare are hereinafter collectively referred to as "Staff Builders."

demanding that he stop working for the Royals. A week later, Whitlock amended Affordable's articles of incorporation to show that the company's shares belonged to his sister, Beverly Igaz.[3] Whitlock explained the reason for this transfer: "[I]t was my impression that it was [Affordable] that was being hired [by the Royals] and not an individual. And therefore, I ceased to be the owner of the company." Report of Proceedings (RP) at 48.

Staff Builders sued Whitlock and Affordable for tortious interference with business expectancy, violation of a noncompetition/confidentiality agreement, and violation of the Uniform Trade Secrets Act (UTSA) (chapter 19.108 RCW). The agreement, signed by Whitlock, provided that if he left Staff Builders, he would not seek work with any of its clients.

During the bench trial, Richard Block, the sole proprietor of Coordinated Healthcare, testified that losing the Royals as clients resulted in a loss of $4,000 to $4,500 in profits, given the length of the Royals' lives, the services provided, and Staff Builders' profit margin.

Affordable billed the Royals $38,780. It paid out $34,768 in salaries, including $23,000 to Whitlock. No other evidence of Affordable's business expenses was presented. Affordable therefore received approximately $4,000 in profit ($38,780 − $34,768 = $4,012).

The trial court found that the "existence of the Royals as clients of Staff Builders and as potential purchasers of home health care . . . were Proprietary Materials and were covered by" the employment agreement Whitlock signed. Clerk's Papers (CP) at 59. In addition, the trial court found that there was no means by which Whitlock would have discovered that the Royals needed home care services except through his employment with Staff Builders. It further found that Whitlock breached the terms of his employment agreement (by failing to maintain the secrecy

---

[3] Igaz's only activity on behalf of Affordable was to sign its annual report. According to Whitlock, Igaz "performed no services and received no pay of any kind." RP at 61.

of the information about the Royals) and that Whitlock and Affordable violated the UTSA (by using the information about the Royals for their own personal benefit).

The trial court awarded the following damages to Staff Builders:

- $4,500 against Affordable ("for damages and recoupment of unjust enrichment pursuant to [the UTSA]")
- $22,500 against Whitlock (his unjust enrichment)[4]
- $10,000 in attorney fees

■ There are two issues in this case. First, does the measure of damages include the recovery of the wages ($22,500) paid to Whitlock, as *unjust enrichment*, in addition to the lost profits ($4,500)? And second, was the attorney fees award appropriate? This court reviews a trial court's award of damages for abuse of discretion. *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 636, 865 P.2d 527 (1993), *review denied*, 124 Wn.2d 1005 (1994). A trial court "abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds." *Palmer v. Jensen*, 81 Wn. App. 148, 151, 913 P.2d 413 (1996) (citing *Allard v. First Interstate Bank of Wash., N.A.*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989)).

## I. Unjust Enrichment

The UTSA allows a plaintiff to recover damages "for the actual loss caused by misappropriation" and "for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." RCW 19.108.030(1). Under the UTSA, the trial court awarded Staff Builders $4,500 for "damages and recoupment of unjust enrichment" against Affordable and $22,500 for "unjust enrichment" against Whitlock. Whitlock does not contest the judgment against Affordable for $4,500.

---

[4] The trial court arrived at $22,500 by adding Whitlock's wages and Affordable's profits and then subtracting Staff Builders' lost profits ($23,000 + $4,000 − $4,500 = $22,500).

■■ Whitlock does contend that awarding his wages as "unjust enrichment" allows Staff Builders to recoup what would otherwise be a business expense, thereby unjustly enriching Staff Builders. In effect, Whitlock argues that Staff Builders should receive only the "net profits" of his misappropriation.

We agree:

(1) Had Whitlock not breached his contract or violated the UTSA, Staff Builders would have continued to pay an employee to care for the Royals (the employee most likely being Whitlock);

(2) Staff Builders testified that their damages were "lost profits" in the amount of $4,500; there was no testimony of any other or further damages.

To determine its lost profits, Staff Builders first calculated its overhead and expenses. This calculation included the caretakers' salaries. Hence, caretaker salaries were taken into account in "computing damages for actual loss." RCW 19.108.030(1). There is no evidentiary basis upon which the trial court could have determined any damages apart from actual loss. *Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wn. App. 350, 360, 944 P.2d 1093 (1997). The trial court erred and this portion of the judgment is reversed.

## II. Attorney Fees

■ Under the UTSA, a court may award reasonable attorney fees to a prevailing plaintiff if willful and malicious misappropriation exists. RCW 19.108.040. The trial court found, as a matter of law, that Whitlock's actions were "willful and malicious." CP at 60. We review questions of law de novo. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436-37, 971 P.2d 936 (1999).

■ Whitlock claims that the trial court erred by awarding attorney fees to Staff Builders. He argues that there was no basis for the trial court's finding of malice. But the record contains substantial evidence supporting the trial court's finding that his actions were willful and malicious.

This evidence includes: (1) Whitlock met the Royals through working for Staff Builders; (2) he formed a corporation to provide services similar to those he provided as a Staff Builders' employee; (3) after he received a cease and desist letter from Staff Builders, he transferred his corporation from his name to his sister's name; and (4) he transferred the corporation back to his name after the 90-day period for imposing liquidated damages against the Royals had expired. The attorney fees award under RCW 19.108.040 is affirmed and Staff Builders is entitled to attorney fees on appeal.

Affirmed in part, reversed in part.

ARMSTRONG, C.J., and QUINN-BRINTNALL, J., concur.

Reconsideration denied November 28 and 29, 2001.

Review denied at 146 Wn.2d 1019 (2002).