150 P.3d 577 (2007)
In the Matter of the DETENTION OF Daniel W. GRIFFITH.
State of Washington, Respondent,
v.
Daniel W. Griffith, Appellant.
No. 55451-4-I.
Court of Appeals of Washington, Division 1.
Decided November 27, 2006.
Publication Ordered January 10, 2007.
*578 Jennifer L.T. Karol, Asst. Attorney General, Seattle, WA, for Respondent.
David L. Donnan, Washington Appellate Project, Seattle, WA, for Appellant.
AGID, J., APPELWICK, C.J., and SCHINDLER, A.C.J.
PER CURIAM.
¶ 1 During voir dire in Daniel Griffith's trial for commitment as a sexually violent predator, the court told the jury that commitment would be to a "secure facility," that the facility was neither a penitentiary nor a part of the Department of Corrections, and that it was a "mental health facility." Because the court's comments were accurate, did not comment on the evidence, and did not lower the State's burden of proof, and because Griffith's challenges to the cross-examination of his expert and the admission of scientific evidence lack merit, we affirm his commitment.
¶ 2 The facts are known to the parties and will be repeated here only when necessary to explain our decision.

DECISION

I.
¶ 3 Griffith first advances several arguments based on the trial court's comments during voir dire. These arguments lack merit.
¶ 4 During voir dire, the attorneys discussed the nature of civil commitment with the prospective jurors. At one point, the Assistant Attorney General asked if anyone had "a problem with putting [Mr. Griffith] in a mental health treatment facility even though he's already served some criminal time for his actions?" Defense counsel then asked the court "to read a brief instruction to the jury so that it's [clear that it's] a secure facility that he's going to be detained in?" The court stated:
We are going to define for you the terms of his commitment, if the jury decides to commit him, and it's to what we call a secure facility. And a secure facility is not a penitentiary, it's not in the State's penitentiary system, it's not run by the Department of Corrections. It's a mental health facility that's run by the Department of Social and Health Services, DSHS. And so it should not be confused with punishment. This is not somewhere where we have guards punishing them and making them build license plates and that sort of thing. This is a secure facility known as the Special Commitment Center. It is a mental health facility where there are counselors. . . .
¶ 5 The following morning, defense counsel moved for mistrial based on the court's description of the commitment center during voir dire:
[the prosecutor] described the place that [Griffith] would be at as a treatment facility, and I objected, asked that it be called a secure facility, and then the Court proceeded to talk about mental health treatment, or treatment. And I believe that that was improper. The jurythere's not anything in the instructions that talks *579 about mental health treatment or treatment. . . . So, at this point, I would ask for a mistrial.
¶ 6 The court denied the motion.
¶ 7 Griffith argues that the court mischaracterized the nature of the special commitment center. He points out that the statute defining "secure facility" makes no mention of treatment or mental health care.[1] But he ignores other statutes describing sexual predator commitment in general, and the special commitment center in particular, as treatment-based confinement.[2] The court informed the jury that any commitment would be to a secure facility that was not part of the prison system and that provided mental health treatment. This information was accurate.[3]
¶ 8 Griffith also contends the court's description amounted to a comment on the evidence because the nature of the special commitment center was in dispute, and the description "conveyed the judge's personal opinion about the nature of the SCC[.]" Griffith's premises and conclusion are wrong. There was no dispute about the nature of the special commitment center. Nor did the court give a personal opinion about the nature of the center. The court's description was factual and, as noted above, completely accurate. It did not amount to a comment on the evidence.
¶ 9 We also reject Griffith's claim that the court's description impermissibly lowered the State's burden of proof. He argues that the court minimized the nature of civil commitment and thus "made it likely the jury would simply side with the state without evaluating whether Mr. Griffith was over fifty percent likely to re-offend." The record belies this claim. The court twice mentioned that the commitment would be to a "secure facility" and accurately distinguished civil commitment from criminal punishment. The court did not minimize the nature of civil commitment.

II.
¶ 10 Griffith next contends he is entitled to a new trial because of the following cross-examination of Dr. Theodore Donaldson, a defense expert:
[ATTORNEY GENERAL]: Okay. Doctor, you've testified in other cases where individuals there are alleged to be sexually violent predators; is that correct?
[DR. DONALDSON]: Yes.
[ATTORNEY GENERAL]: And, in fact, in the past you've come to conclusions that people don't meet the criteria?
[DR. DONALDSON]: Yes.
[ATTORNEY GENERAL]: And yet these individuals have reoffended?

[DEFENSE COUNSEL]: Objection, Your Honor. I would request a sidebar.
THE COURT: No. Overruled. Sit down.
[DR. DONALDSON]: Well, that's true, in fact. But that's really not relevant, no matterfirst of all, in this case I think we're talking aboutmy primary position was he didn't have a mental disorder as a rapist, and I said he was not a paraphilic rapist, he was a criminal rapist. Well, he got out and he raped again. Now, if I am right, that he's a criminal rapist, that was just another criminal act. If I was wrong, and the State's experts were right, that he had a mental disorder, he probably would have some sort of mental defense at his next trial. I thought he was a criminal rapist.[4]
Griffith argues that the emphasized question was improper and that the court abused its discretion in overruling his objection and denying a mistrial. We disagree.
*580 Trial courts have broad discretion in determining the scope of cross-examination,[5] particularly with respect to the examination of experts.[6] While the probative value of the question at issue here is questionable, we cannot say the court's decision exceeded the wide discretion afforded it in this area. Having reached that conclusion, we reject Griffith's claims that the question amounted to misconduct and warranted a mistrial.
¶ 12 In addition, any error or misconduct would not require reversal because Griffith has not demonstrated prejudice. To prevail on a claim of prosecutorial misconduct, Griffith must show that the misconduct was prejudiciali.e. there is a substantial likelihood the misconduct affected the verdict.[7] Likewise, any error in allowing the cross-examination is reversible only if it affected the outcome of the trial,[8] and a mistrial is warranted "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly."[9] Griffith claims the jury likely interpreted the question "as allowing it to commit Mr. Griffith if there was any chance of re-offense or led them to convict despite a lack of proof that Mr. Griffith would more probably than not re-offend if not confined to a secure facility." But the court instructed the jury that to commit Griffith it had to find that he more probably than not would engage in predatory acts of sexual violence if released.
¶ 13 Moreover, Dr. Donaldson's testimony effectively neutralized any prejudice. In his answer, Dr. Donaldson explained why the question was not relevant to the validity of his opinion in this case. On redirect, he testified that reoffense occurs regardless of whether a defendant is more likely to reoffend than not, and that there is no such thing as a "zero probability" of reoffense. This testimony was uncontradicted.
¶ 14 Finally, the Assistant Attorney General's question was the only reference to the recidivism of defendants Dr. Donaldson had testified for in the past. It is unlikely that a single, isolated question inflamed the jury or affected its verdict.

III.
¶ 15 Last, Griffith contends the court erred in admitting penile plethysmograph evidence. He asserts that such evidence does not meet the Frye[10] standard for admission of novel scientific evidence. This contention was rejected in, and is controlled by, the State Supreme Court's recent decision in In re Det. of Halgren.[11]
¶ 16 Affirmed.
NOTES
[1] See RCW 71.09.020(13).
[2] See RCW 71.09.010, .020(17), .060(1), .080(2); In re Pers. Restraint of Young, 122 Wash.2d 1, 21-23, 857 P.2d 989 (1993).
[3] It is clear from the record of voir dire that the jurors understood that commitment involved restraint. One juror referred to such commitment as "serving time in a mental facility to avoid future possible crimes or to have treatment." And following the court's description, defense counsel emphasized that "he will be restrained in a secure facility" and "essentially confin[ed] . . . for something he may do in the future."
[4] (Emphasis added.)
[5] State v. Marks, 90 Wash.App. 980, 984, 955 P.2d 406, review denied, 136 Wash.2d 1024, 969 P.2d 1063 (1998).
[6] Dinner v. Thorp, 54 Wash.2d 90, 338 P.2d 137 (1959); Levine v. Barry, 114 Wash. 623, 195 P. 1003 (1921).
[7] State v. Pirtle, 127 Wash.2d 628, 672, 904 P.2d 245 (1995).
[8] State v. Lopez, 95 Wash.App. 842, 855-56, 980 P.2d 224 (1999); State v. Smith, 67 Wash.App. 838, 846, 841 P.2d 76 (1992).
[9] State v. Lewis, 130 Wash.2d 700, 707, 927 P.2d 235 (1996) (citing State v. Johnson, 124 Wash.2d 57, 76, 873 P.2d 514 (1994)).
[10] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[11] 156 Wash.2d 795, 132 P.3d 714 (2006).