IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT A. LERNER, | No. 83364-2-I |
| Respondent | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PHILIP P. MANN and ANDREA T. MANN, husband and wife and the marital community property composed thereof, d/b/a MANN LAW GROUP, PLLC., | |
| Appellant | |

DÍAZ, J. — Appellant, Phillip Mann, appeals the judgment and decision in favor of Robert Lerner (Mann's former client), which found that Mann committed legal malpractice when representing Lerner in Lerner v. Cascade Designs, Inc., King County Superior Court (2019) (the "underlying action"). Mann argues that the trial court committed error in allowing the scope and content of Lerner's expert witness's testimony. Mann further argues that the evidence presented during the bench trial did not support the court's decision that he violated the standard of care. Finally, Mann argues that the court erred in awarding and calculating the damages granted. Finding no error, we affirm the court's decision and judgment.

Citations and pin cites are based on the Westlaw online version of the cited material.

I.  FACTS

A.  The Underlying Action: Lerner v. Cascade Designs, Inc. (2016-2018)[1]

In 1996, Lerner, an inventor, entered into an asset purchase agreement (APA) with Cascade Designs, Inc. (CDI).  Lerner v. Cascade Designs, Inc., No. 78570-2-I, slip op. at 2 (Wash. Ct. App. Aug. 26, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/785702.pdf.  Lerner sold certain business assets to CDI in exchange for royalties.  The APA allowed Lerner to view CDI's business records under certain conditions.

In the event of a disagreement, the APA required the parties to use arbitration as envisioned by state law.  Lerner, No. 78570-2-I, slip op. at 2.  Specifically, section 25.1 (Governing Law) stated, "Except for emergency injunctive relief, any controversy arising from this Agreement or its breach shall be determined by arbitration pursuant to RCW 7.04."  RCW 7.04A is the state's Uniform Arbitration Act.

As to the applicable process, section 25.2 (Selection of Arbitrators) of the APA mandated:

> Within twenty (20) days after a notice by either party to the other requesting arbitration and stating the basis of the party's claim, one arbitrator shall be appointed by each party.  Notice of the appointment shall be given by each party to the other when made. The two arbitrators shall immediately choose a third arbitrator to act with them.

---

[1] For additional detail on the factual background of this case, see Lerner v. Cascade Designs, Inc., No. 78570-2-I (Wash. Ct. App. Aug. 26, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/785702.pdf.

Further, the APA required the parties to use arbitration under the rules of the American Arbitration Association (AAA), stating at section 25.3 (Procedure), that, "The arbitration shall be governed by the rules of the American Arbitration Association."

Finally, the APA stated that in the event of litigation or arbitration relating to the APA, the prevailing party is entitled to recover court costs and reasonable attorney's fees.

For almost 20 years, Lerner received royalties from CDI. After he stopped receiving royalties in 2015, Lerner tried to obtain CDI's records to understand the reasons for the cancelation, and CDI refused. In 2016, Lerner hired Philip Mann to represent him in the dispute.

Mann recommended that Lerner file an injunction in superior court to access CDI's records. According to correspondence admitted at trial, Lerner was sensitive to the cost of pursuing any legal action. Mann had his associate, Tim Billick (Billick), work on the case to reduce costs. On July 16, 2016, Mann filed the action, on behalf of Lerner, against CDI in King County Superior Court, alleging a breach of the record inspection provisions of the APA. Lerner, No. 78570-2-I, slip op. at 2 (again, the "underlying action").

On July 21, 2016, Billick emailed Lerner, copying Mann, to update Lerner on their strategy. Billick wrote that CDI "was taking the position that this issue needs to be arbitrated by the AAA." "[O]ur plan at the moment is:

1.  Attempt (once again) to get inspection without formal procedures.

2. Either (a) place the case in abeyance (stay all deadlines) so that the court can maintain jurisdiction or (b) dismiss the complaint without prejudice.

3. File an action with the AAA *as to the very narrow issue* of whether we are entitled to inspect the records. We feel we are on solid ground that Robert [Lerner] is entitled to review the records, so we are confident that Robert *may* be able to collect 'court costs and reasonable attorneys' fees' under paragraph 26 of the APA. . . .

The email also included the costs associated with starting an arbitration with AAA and included AAA's fee schedule.

CDI did not answer the superior court complaint. Lerner, No. 78570-2-I, slip op. at 2. Instead, on July 26, 2016, CDI moved to dismiss or stay the proceedings pending arbitration, and the court granted CDI's motion to stay on August 18, 2016. Id. Further, the superior court ordered the parties to proceed with arbitration and file joint status reports with the court every 90 days until the stay was lifted or the case dismissed.

It was not until between September 2017 and February 2018 that the parties selected the three-person panel pursuant to section 25.2 reviewed above. Lerner, No. 78570-2-I, slip op. at 2. Concurrently, CDI and Lerner continued to negotiate, albeit unsuccessfully, on Lerner's access to CDI's records. At the same time, while some steps were taken toward pursuing arbitration, Lerner never filed a demand for arbitration, no one paid the AAA fee, and no arbitration proceedings were held at that point. Lerner, No. 78570-2-I, slip op. at 2.

On April 26, 2018, CDI moved to dismiss the underlying action pursuant to CR 41(b)(1). Lerner, No. 78570-2-I, slip op. at 3.

When appraising Lerner of a proposed response to CDI's motion, Mann said he found the motion "puzzl[ing]" and that CDI was trying to hold them to the "letter of your prior agreement, and, in particular, the procedures for instituting arbitration." Mann did not mention that CDI could seek *its* attorneys' fees if the motion was granted.

In his brief in opposition to the motion to dismiss, Mann, on behalf of Lerner, argued that, despite section 25.1 above, the court should strike its previous referral to arbitration, lift the stay, and proceed with the case on the merits. Mann further noted that CDI only recently claimed that the arbitration had to be initiated through the AAA. Mann did not take any additional action other than to oppose the motion to dismiss on the merits.

On May 14, 2018, the trial court granted CDI's motion to dismiss and awarded CDI attorney fees and costs of $130,835.47 plus 12% interest per annum.

Lerner appealed the dismissal and award of attorney fees and costs to this court. Lerner, No. 78570-2-1, slip op. at 3. Mann continued to represent Lerner in the 2019 appeal. On August 26, 2019, this court affirmed the trial court's dismissal of the underlying action, concluding in pertinent part:

- Lerner (through Mann) did not take the steps required to commence the arbitration within a reasonable time, and the superior court stay expired.

- As acknowledged by CDI, if Lerner (through Mann) had commenced the arbitration or otherwise noted the matter prior to the May 14, 2018 hearing, the court could not have dismissed for want of prosecution. But he did not take advantage of that opportunity.

5

Lerner, No. 78570-2-1, slip op. at 5-6. This court granted CDI additional attorneys' fees on appeal, awarding a new total of $183,118.99 plus 12% interest per annum.

At the time of this court's decision on Lerner's first appeal, no arbitration had yet occurred.

B.     Lerner v. CDI in Arbitration (2019)

After Lerner's appeal failed, he hired new counsel, Michael Matesky, to represent him in his still-pending arbitration with CDI regarding the royalty records. The arbitration proceeded and, on December 9, 2019, Lerner prevailed against CDI. Arbitration Case No. 01-18-0003-2661. The arbitrator awarded Lerner $84,535 in attorney fees and $33,700 in arbitration costs, for a total award of $117,535, and allowed the requested document inspection.[2] Further, the order stated its ruling was "without prejudice to any claim for fees, or costs, or damages for any matter or cause of action outside the limited scope of this arbitration."

As each party attempted to collect on its respective judgments, on April 9, 2020, the King County Superior Court granted CDI's motion to consolidate the cases involving Lerner and CDI "to equitably determine the judgments owed to each party as the parties owed each other money between the two cause numbers."

---

[2] As a diligent reader may notice, $84,535 + $33,700 equals $118,235, and not $117,535, which is the amount utilized by the trial court and the parties throughout the record and briefing. As it does not materially change the analysis herein, we will use the number used by the parties and trial court.

The court ordered, in pertinent part, that all judgments in favor of Lerner be offset by and with net amounts awarded in favor of CDI in the prior case regarding CDI's motion to dismiss. The court deducted $117,535 from Lerner's arbitration award, reducing what CDI owed to Lerner to $0. As to CDI's judgment against Lerner in the underlying action, which the court found "originated as $183,118.99 shall now be $149,418.99 with an attorney's lien against it of $84,535." As the court described it, the court "deducted the $33,700 amount owed but kept in the attorney's fees award due to the Notice of Attorney Lien."

The judgment further ordered that "Lerner shall be entitled to that document review and production described in the [arbitration award] upon satisfaction of and compliance with the [judgment against Lerner] and paying in advance for the . . . document review and production."

Lerner appealed the judgment, in a separate action. This court issued an opinion on November 29, 2021. Lerner v. Cascade Designs, Inc., No. 81445-1-I (consolidated with 82105-9-I), slip op. at 1 (Wash. Ct. App. Nov. 29, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/814451.pdf. In pertinent part, this court reversed the superior court's consolidated order for adding preconditions to Lerner's enforcement of the arbitration award. Id. at 4. Additionally, this court affirmed the trial court's denial of attorney fees to CDI and awarded Lerner reasonable attorney fees on appeal. Id. at 2. In short, this court held that both the arbitration award and judgment in the underlying case were enforceable as entered: (a) $117,535 owed to Lerner by CDI (along with attorney

fees for the appeal, subject to an $84,535 attorney lien owed to Matesky), and (b) $183,118.99 owed to CDI by Lerner.

C.    The Instant Action: Lerner v. Mann (2021)

On May 15, 2020, Lerner sued Mann for legal malpractice also in King County Superior Court. The matter proceeded to a bench trial. At the bench trial, as will be discussed in more detail below, Lerner and Mann each offered the testimony of experts, Christopher Brain and Robert Christie, respectively. Each testified as to what the standard of care for a reasonable attorney would be in these circumstances and whether that standard was breached. Not unexpectedly, Christie testified that he believed Mann met the standard of care by opposing CDI's motion to dismiss in the way he did, while Brain testified that Mann violated the standard of care by proceeding on the merits against the motion to dismiss instead of choosing one of many other options, stating:

> the bottom line being is that the choices and alternatives that could have avoided a significant attorneys' fees award were not selected, and in my opinion, no reasonable lawyer would have taken that course of action . . .

Also, unsurprisingly, Mann himself testified that he believed he met the standard of care. Specifically, he testified that there was no requirement he file an arbitration with the AAA, and that the stay in place on the superior court order pending arbitration did not have time limits imposed by Rule 41. He confirmed that he vigorously opposed CDI's motion to dismiss, claiming Lerner instructed him to "block their attempt at dismissal."

8

Furthermore, the court itself examined Mann, asking whether he recalled that CDI requested attorney fees during discussion of the motion to dismiss:

Q: Were you aware at the time you did your response, or at the time this motion was filed, that CDI was going to come and ask for attorneys' fees if this motion was granted?

A. I don't recall seeing that in there. I didn't think it was a serious threat . . . But there was always in the back of our minds that under an asset purchase agreement there was a fee shifting provision . . .

Q: Do you recall discussing with Mr. Lerner . . . that he might be exposed to an award of attorney's fees if the motion [to dismiss] was granted?

A: I don't recall in connection with this particular motion, but as I said, there was always the concern that an adverse ruling . . . could have that result.

On September 10, 2021, the court found in favor of Lerner. The court found that an attorney-client relationship existed between Mann and Lerner, giving rise to a duty of care that Mann owed Lerner. It next found that, by a preponderance of the evidence, Mann breached the applicable standard of care in two ways:

(1) Opposing CDI's motion to dismiss on the merits, rather than by exercising other alternatives . . . such as commencing arbitration with the AAA, and

(2) by contesting CDI's motion to dismiss without disclosing to Lerner the risk that CDI could be awarded its attorney fees if it prevailed on its motion.

As to the former, the court concluded that "Mann's response to CDI's motion to dismiss was not within the range of reasonable alternatives from the perspective of a reasonable, careful, and prudent attorney in Washington."

9

And, as to the latter, the court stated, "Mann also breached the standard of care by failing to discuss with Lerner the possibility that the trial court could award attorneys' fees and costs if the motion [to dismiss] was granted." The court continued, "In fact, Mann's emails to Lerner downplay the significance of the motion to dismiss stating that 'the purpose behind it puzzles me. Even if the motion is granted, the dismissal will be 'without prejudice' meaning the case can simply be refiled.'"

The court, furthermore, discussed the application of a case involving the interpretation of arbitration provisions, Gandee v. LDL Freedom Enterprises, Inc., 176 Wn.2d 598, 293 P.3d 1197 (2013), stating: "Gandee does not contain a definitive ruling on the issue and is dicta at best."

Finally, the court held that judgment should be entered against Mann in favor of Lerner for $183,118.99 with interest accruing at 12% per annum from January 23, 2020 until paid. The court also denied, however, Lerner's request for additional damages related to his valid judgment against CDI.

On November 3, 2021, Mann appealed the findings of fact and conclusions of law, and judgment to this court.

D.    Subsequent Developments

Mann placed money in the court's registry to prevent the accrual of additional interest. On August 23, 2022, the King County Superior Court entered a satisfaction of judgment order. The court found, among other things, that:

> 4. On May 4, 2022, Mr. Lerner satisfied all amounts remaining outstanding on the January 23, 2020 Judgment by delivery of $1,345.41 to counsel for Cascade Designs, Inc.

5. Accordingly, the January 23, 2020 Judgment held by Cascade Designs, Inc. against Robert Lerner was satisfied in full as of May 4, 2022.

## II.      DISCUSSION

A.      Scope and Content of Expert Testimony

Mann contends, first, that the trial court erred by allowing Lerner's expert witness, Christopher Brain, to testify as to opinions that were previously undisclosed in his pretrial declarations or pre-trial discovery responses. Second, Mann further contends the trial court erred by asking Brain "leading questions," which led to further previously undisclosed opinions. We conclude neither was error.

1. Previously Undisclosed Opinions

a. Law

This court reviews evidentiary errors for an abuse of discretion. Hizey v. Carpenter, 119 Wn.2d 251, 268, 830 P.2d 646 (1992) (citing Fenimore v. Donald M. Drake Constr. Co., 87 Wn.2d 85, 91, 549 P.2d 483 (1976)). "A trial court abuses its discretion when the ruling is manifestly unreasonable or based on untenable grounds." Id. (citing State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Stated otherwise, this panel should "reverse a trial court's evidentiary ruling 'only when no reasonable person would take the view adopted by the trial court.'" Peralta v. State, 187 Wn.2d 888, 894, 389 P.3d 596 (2017) (citing State v. Ellis, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)).

"The trial judge acting in discretion is granted a limited right to be wrong, by appellate court standards, without being reversed. There are wide variations in

the degree of 'wrongness' which will be tolerated." State v. Marks, 90 Wn. App. 980, 984, 955 P.2d 406 (1998) (citing Appellate Review of Trial Court Discretion, 79 F.R.D. 173, 176 (Rosenberg, M.) (1979)). "The deference given by a reviewing court to a trial court's discretionary decision is related to the nature and consequences that attend the particular discretionary decision." Id.

"In nonjury cases the rules with respect to admission and rejection of evidence are more relaxed than in jury trials. Liberal admission of evidence is ordinarily encouraged in nonjury cases." In re Noble's Welfare, 15 Wn. App. 51, 58, 547 P.2d 880 (1976) (citing State v. Bell, 59 Wn.2d 338, 365, 368 P.2d 177 (1962); State ex rel. Beam v. Fulwiler, 6 Wn. App. 369, 372, 492 P.2d 1040 (1972)). "'In a bench trial, there is even a more 'liberal practice in the admission of evidence' on the theory that the court will disregard inadmissible evidence.'" State v. Melton, 63 Wn. App. 63, 69, 817 P.2d 413 (1991) (citing State v. Jenkins, 53 Wn. App. 228, 231, 766 P.2d 499 (1989)).

Furthermore, and closer to the issues in dispute here, "[t]rial courts have broad discretion in determining the scope of cross-examination, particularly with respect to the examination of experts." In re Det. of Griffith, 136 Wn. App. 480, 485, 150 P.3d 577 (2006) (citing Marks, 90 Wn. App. at 984; Dinner v. Thorp, 54 Wn.2d 90, 338 P.2d 137 (1959); Levine v. Barry, 114 Wash. 623, 195 P. 1003 (1921)).

Finally, "even if a trial court's decision to admit certain evidence is in error, i.e., an abuse of discretion, an appellant must still demonstrate that the error was prejudicial." Jenkins, 53 Wn. App. at 231 (citing State v. Robtoy, 98 Wn.2d 30, 44,

653 P.2d 284 (1982), abrogated on other grounds by Davis v. United States, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)).

In short, "[A] trial court has substantial discretion in bench proceedings because it is presumed the judge will disregard inadmissible testimony . . . 'thus avoiding any prejudice to the defendant.'" State v. L.J.M., 79 Wn. App. 133, 137, 900 P.2d 1119 (1995), rev'd on other grounds, 129 Wn.2d 386, 918 P.2d 898 (1996) (citing Melton, 63 Wn. App. at 68).

b. Analysis

Mann contends that Brain's pretrial declaration found misconduct only in the failure either to commence arbitration, voluntarily dismiss the underlying action, request a continued stay, or note the matter for trial within one year, and *not* in the failure to warn Lerner "that attorneys' fees might be awarded against him." In other words, while apparently conceding the first breach (responding on the merits) was contained in Brain's declaration, Mann argues the second breach (failure to warn) was not.[3]

Lerner responds that, in paragraph 10 of Brain's opinion, Brain stated that "Mann was also professionally negligent by . . . allowing this judgment to be entered against his client." Lerner argues that it was "implicit" from that opinion that one of Mann's alleged breaches of the duty of care was in failing to warn

---

[3] Mann contends he preserved this issue by moving in limine to limit Brain's testimony strictly to his expert report. Lerner disagrees, arguing that, because the court reserved ruling on his motion, and Mann did not subsequently object when the issue was raised during trial, Mann waived his right to appeal it. In our discretion, we nonetheless will consider this assignment of error on the merits. RAP 2.5(a).

13

Lerner that, if they contested CDI's motion to dismiss in the way he did, losing the motion could *result* in the imposition of attorney fees. Indeed, the risk of assuming responsibility for the fees is why the entry of judgment against Lerner mattered.

We conclude that Lerner presents a reasonable interpretation of the declaration. A reasonable person could conclude that the trial court correctly read Brain's declaration, and correctly understood his testimony, in that way. In turn, a reasonable person could conclude that the misconduct the court found was reasonably inferable from the professional errors described in Brain's declaration. Peralta, 187 Wn.2d at 894. Thus, it was not an abuse of the court's significant discretion to allow Brain to testify as to these opinions and make findings based on them, even assuming the trial court's findings were based solely on inferences from Brain's declaration and testimony.

But the court's findings, however, were not based solely on Brain's evidence. That is, even if it was improper to so read Brain's declaration and testimony in the way the court did, Mann himself also testified, upon the court's questioning, that he could not remember whether he advised Lerner about the possibility of being assessed attorney fees. Moreover, Mann's expert, Christie, also testified generally as to the professional requirement to disclose risks to his clients when taking any "particular path." In turn, admission of Brain's testimony about fees was not prejudicial. In other words, even if Brain's testimony were excluded, the court could have reached the same conclusion through that testimony of Mann and/or his expert.

In reply, Mann argues that admission of Brain's "never before disclosed"

14

testimony is unfair because, having agreed to take Brain out of order, Christie was unable to rebut his new opinion. However, nothing prevented Mann from asking the court for leave to recall Christie to rebut Brain's allegedly new opinions.

Finally, by effectively conceding that Brain's declaration contained the first breach (responding on the merits), even if Brain's second opinion was excluded, the trial court could have found that Mann violated the standard of care in simply how he responded to the motion to dismiss when several options were apparently available. Therefore, we conclude no prejudice occurred for this reason as well.

2. The Court's Questioning

Next, Mann argues that the trial court's own questioning of Brain was "leading" and, thus, unfair toward Mann. We conclude this argument is without merit.

a. Law

"Trial judges have wide discretion to . . . conduct trials fairly, expeditiously, and impartially." In re Marriage of Zigler and Sidwell, 154 Wn. App. 803, 815, 226 P.3d 202 (2010) (citing State v. Johnson, 77 Wn.2d 423, 426, 462 P.2d 933 (1969)). Not only are evidentiary decisions, but "a trial judge's courtroom management decisions [are reviewed for an] abuse of discretion." Id. (citing Peluso v. Barton Auto Dealerships, Inc., 138 Wn. App. 65, 69, 155 P.3d 978 (2007)).

In either a bench trial or trial before a jury, a judge is allowed to interrogate a witness. ER 614(b). "Normally, a trial court may ask questions of the witnesses without violating the due process right to a fair trial." Pierce v. Bill & Melinda Gates

15

Found., 15 Wn. App. 2d 419, 443, 475 P.3d 1011 (2020) (citing ER 614(b); State v. Moreno, 147 Wn.2d 500, 509-11, 58 P.3d 265 (2002)).

"A bench trial puts 'unique demands' on the judge presiding, 'requiring them to sit as both arbiters of law and as finders of fact.'" Pierce, 15 Wn. App. at 443 (citing State v. Read, 147 Wn.2d 238, 245, 53 P.3d 26 (2002)). Improper questioning "is naturally less of a concern in the context of a bench trial, however, as where the facts in a case are 'passed upon by the trial judge alone, [the judge] may be presumed to have disregarded all improper and incompetent evidence.'" Id. at 444 (citing Whiting v. City of Seattle, 144 Wash. 668, 675, 258 P. 824 (1927)). "This presumption in favor of the trial judge" should be "a guiding principle" when examining whether a trial judge's questioning was fair. Id.

Finally, under RAP 2.5, to preserve an objection for appeal, the party must object to questioning or errors at trial. Objections to the court's questioning of witnesses may be made *at the time* or at the next available opportunity. ER 614(c) (emphasis added).

b. Analysis

Mann characterized the trial court's questioning of Brain regarding arbitration procedures as thinly veiled advocacy for a litigant and claims the questioning led to more previously undisclosed testimony. United States v. Hickman, 592 F.2d 931, 933 (6th Cir. 1979).

Indeed, at multiple times during Brain's direct examination by Lerner's counsel, the court did ask clarifying questions regarding the initiation of the AAA arbitration. These questions were innocuous. For example, the court asked what

16

"start of arbitration" meant. We conclude that these types of questions are hardly sufficient to overcome the presumption that the trial judge could parse through all the evidence, separate out the wheat from the chaff, and rule on the evidence properly in front of him. In other words, it was not an abuse of discretion to ask such basic questions, whether leading or not.

Moreover, despite Mann's insistence to the contrary, the two breaches of the duty of care found by the court were not related to whether Mann should have arbitrated with AAA specifically or what the definition of commencing an AAA arbitration was. Rather than asserting Mann was required to commence arbitration with a particular arbitration agency, the court found that the breach occurred when Mann contested CDI's motion to dismiss on the merits and did so without advising of the significant economic risk. Thus, the questions were minimally related to, and certainly not dispositive to, the outcome of the trial, namely whether Mann violated the duty of care in the two specific ways the court identified. Therefore, Mann has not shown that the court's clarifying questions about arbitration procedure prejudiced the outcome against him.

By way of final response, Mann cited two out-of-state cases. However, neither case appears to apply our court's "presumption in favor of the trial judge's discretion" to appropriately question a witness. Pierce, 15 Wn. App. 2d at 44. As described above, clarifying questions by a judge at a bench trial falls within the wide discretion Washington grants its judges in such circumstances, perhaps in ways other states do not.

Even if the court's questions were objectionable, Mann did not object to its

questions and such error thus was not preserved for appeal. RAP 2.5.

In short, we conclude there was no error in the scope of Brain's testimony or in the court's questioning.

B.      Sufficiency of the Evidence for Violation of the Standard of Care

Mann argues that the superior court erred because there was not substantial evidence to find he violated the standard of care. Specifically, Mann complains that the trial court failed to credit Mann's declaration or his expert witness's testimony, even though they "fully," "consistently" and "forcefully" established that he did not violate the standard of care. We conclude the trial court did not err.

1. Law

If a finding of fact from a bench trial is unchallenged, it becomes a verity on appeal. Cowiche Canyon Conservancy v. Bosley,118 Wn.2d 801, 808, 828 P.2d 549 (1992) (citing Nearing v. Golden State Foods Corp., 114 Wn.2d 817, 818, 792 P.2d 500 (1990)). This Court has held the same in cases of legal malpractice. Bullard v. Bailey, 91 Wn. App. 750, 755 n.1, 959, P.2d 1122 (1998) (failure to assign error to a trial court's finding of fact that there was an attorney-client relationship in legal malpractice case makes finding verity on appeal).

Further, this court reviews the sufficiency of a trial court's factual findings under the substantial evidence standard. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true. Id. Moreover, "[t]he credit

to be given to any witness's testimony, including expert opinion testimony, is quintessentially a matter for the trier of fact to determine." Strauss v. Premera Blue Cross, 194 Wn.2d 296, 302, 449 P.3d 640 (2019). This court does not weigh the credibility of conflicting evidence from trial on appeal, instead, it must leave that to the trier of fact. Id. at 303-304.

"To establish a claim for legal malpractice, a plaintiff must prove the following elements: (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred." Hizey, 119 Wn.2d at 260-61 (citing Hansen v. Wightman, 14 Wn. App. 78, 88, 538 P.2d 1238 (1975); Sherry v. Diercks, 29 Wn. App. 433, 437, 628 P.2d 1336 (1981)).

As to the second element, at issue in this assignment of error, "[t]o comply with the duty of care, an attorney must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in this jurisdiction." Hizey, 119 Wn.2d at 261 (citing Hansen, 14 Wn. App. at 90).

In short, "[w]hen an attorney makes an error in litigation, the plaintiff must prove a 'trial-within a trial.'" Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 777, 432 P.3d 821 (2018) (citing Aubin v. Barton, 123 Wn. App. 592, 608, 98 P.3d 126 (2004)). And the step relevant here is "to determine whether" the trial court had substantial evidence to find that a "client's case was lost or compromised

by the attorney's alleged negligence." Id. (citing Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson, 95 Wn. App. 231, 235, 974 P.2d 1275 (1999)).

2. Analysis

Mann did not assign error to the findings of fact found by the trial court in support of its conclusion that he violated his duty of care toward Lerner. Such findings of facts included (number 6) that "the APA also provides that in the event of litigation or arbitration . . . the prevailing party is entitled to recover court costs and reasonable attorney's fees." Furthermore, the trial court found (in finding of fact number 13) it took about 20 months for the parties to agree on arbitrators but they did not begin the arbitration. The trial court further found:

> 21. On April 27, 2018, CDI filed a motion to dismiss the case for lack of prosecution under CR 41 (b)(1). CDI argued that 20 months had passed since the case was stayed, and Lerner had not yet filed for arbitration.

> 23. Mann filed a response to CDI's motion to dismiss. . . . Mann did not mention that CDI could seek their attorneys' fees if the motion was granted.

> 24. At trial, Mann did not recall whether he informed Lerner that he could be ordered to pay CDI's attorney fees and costs if the court granted the motion to dismiss. He testified that he did not think that an attorneys' fees award was a serious threat but it was in the back of his mind. Lerner testified that Mann did not discuss the risk of an attorneys' fees award.

Because these findings of fact were issued by a trial court in a civil bench trial, and Mann did not assign error to them, they become verities on appeal. See, e.g., Cowiche Canyon, 118 Wn.2d at 808 (citing Nearing, 114 Wn.2d at 818). Again, Mann does not address these facts and, instead, argues that the trial court's reliance *on Brain* was not supported by substantial evidence. Regardless of

whether that is accurate, we conclude the foregoing findings of fact (numbers 6, 13, 21, 23, 24) on their own would be enough to affirm the trial court's second basis for a conclusion of legal malpractice, namely, the failure to advise his client of the risk of attorney's fees if they lost the motion to dismiss.

Our analysis could end there. However, we will also address Mann's contention that the trial court's findings related to Brain were not supported by substantial evidence.

Again, Mann complains that the court should have given his declaration and that of his expert, Robert Christie, more "credit" or weight. For example, as he reviews "the opinions expressed by Mr. Brain," Mann restates the points he made in his declaration, which he claims "refute[], in detail, each . . . supposed negligence." Mann then turns to his expert's testimony to support Mann's view of his actions. Mann then goes through a long presentation on why Brain's testimony is deficient, including that his memory was subpar and he did not review relevant records. Mann concludes that, when presented with this conflicting evidence, the court should not have found that Mann violated the standard of care, as "[t]he evidence adduced at trial does not support the superior court's decision."

For this court to determine that substantial evidence supports a trial court's conclusions of law, it must be convinced that there is a "quantum of evidence in the record to persuade a reasonable person that the declared premise is true." Wenatchee Sportsmen Ass'n, 141 Wn.2d at 176. Here, the trial court relied on and referred to the trial testimony (including Mann's testimony in response to questioning by the court), and the admitted documentary evidence when finding in

21

favor of Lerner.

Based upon this trial testimony, the court found that Mann did not advise Lerner of the risk that, if the trial court granted the motion to dismiss, Lerner could be ordered to pay CDI's attorney fees and costs. Finally, the court found that "Mann was or should have been aware that CDI had a very strong argument that arbitration had to be initiated."

The court made these findings, of course, after presiding over several days of trial where it could observe the demeanor of the parties and their witnesses to assess credibility. It is the unique province of the fact finder, and not this court, to weigh the credibility of conflicting evidence. Strauss, 194 Wn.2d at 303-04.

There is nothing in the record to indicate the court improperly disregarded the testimony and evidence presented, or weighed it in a way that would persuade no reasonable person. Further, Mann does not cite to any specific finding of fact or conclusion of law weighing the competing evidence legally inappropriately, such that its reliance upon Lerner's evidence would be legally insufficient. Therefore, we conclude the trial court did not abuse its discretion, and there was the proper quantum of evidence to persuade a reasonable person Mann violated the standard of care.[4]

C. Application of Gandee

During trial, the court considered the applicability of a case that Mann, through his attorney, had not raised during the underlying matter, namely, Gandee,

---

[4] We need not reach whether Mann adequately assigned any error on appeal or whether the findings from our decision in 2019 are the binding law of the case.

176 Wn.2d at 598. As part of his closing argument, counsel for Mann contended it applied to and should control the circumstances of his case. Conversely, counsel for Lerner argued Gandee was irrelevant. The parties effectively repeat the same arguments here.

We conclude that the court did not err by declining to follow Gandee, as it is indeed not relevant to the breaches of the standard of care at issue and is, thus, inapposite. Specifically, again, the trial court held that Mann committed malpractice by (1) opposing CDI's motion to dismiss on the merits, and (2) failing to inform Lerner of the risk that he would be liable for attorney fees should CDI's motion to dismiss be granted. The trial court did not conclude that Mann committed malpractice because he should have arbitrated with AAA specifically. The trial court found that there were a range of options Mann could have taken to avoid committing malpractice "such as arbitration with the AAA," i.e., arbitrating specifically with AAA upon receipt of the motion to dismiss was not the only option available to Mann. Thus, Gandee is facially irrelevant.

Moreover, even considering Mann's interpretation of Gandee, we conclude it does not control the trial court's determination of liability. The clause in the contract in question in Gandee stated, "All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of [the AAA.]" Gandee, 176 Wn.2d at 602. In discussing whether such a mandatory arbitration clause in a consumer contract is unconscionable, our

---

Because neither party adequately briefed these issues, we need not review them further. Cowiche Canyon, 118 Wn.2d at 809.

23

Supreme Court reviewed competing evidence related to the costs of arbitration. Id. at 605-06. The court noted that the defendant corporation "appears" to correctly assert that that "clause does not require arbitration with the AAA but only that the rules of the AAA be followed." Id. at 605. In other words, the parties were required to engage in arbitration using AAA's rules, not necessarily to arbitrate specifically with AAA's arbitrators. But again, the trial court's findings did not rely on Mann failing to arbitrate with AAA specifically, simply that he failed to choose one of many available options that would not have resulted in Lerner incurring CDI's fees. Therefore, Gandee does not support Mann's assertion.[5]

D.    Damages

Mann argues that Lerner is entitled to no damages because (1) he allegedly had not paid any damages and, thus, had not suffered any actual harm; (2) such damages would be uncollectable; and (3), because Lerner did not stop interest from accruing, he did not mitigate his damages. We conclude that the trial court did not err in awarding the damages it did to Lerner.[6]

1.    Payment of Damages

This court reviews a trial court's award of damages for an abuse of discretion. Staff Builders Home Healthcare, Inc. v. Whitlock, 108 Wn. App. 928,

---

[5] We need not address Lerner's discussion of whether the law of the case precluded application of Gandee, whether Mann waived the argument by waiting until trial to raise it, or whether that portion of Gandee Mann wishes to apply is dicta.

[6] Additionally, Mann claims his damages are unrecoverable because Lerner is a foreign national, as Lerner resides in Guanajuato, Mexico. We need not reach the issue of whether CDI can collect damages from Lerner due to his status as a foreign national because neither party adequately briefed this issue. Cowiche Canyon, 118 Wn.2d at 809.

932, 33 P.3d 424 (2001).

As discussed previously, liability for legal malpractice requires: "(a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform that duty; and (d) the negligence of the lawyer must have been the proximate cause of the damage to the client." Bush v. O'Connor, 58 Wn. App. 138, 142, 791 P.2d 915 (1990) (citing Martin v. Northwest Wash. Legal Servs., 43 Wn. App. 405, 408, 717 P.2d 779 (1986) (quoting Sherry, 29 Wn. App. at 437)).

As to the final element, "[t]he purpose of tort damages [in a legal malpractice suit] is to place the plaintiff in the condition he would have been in had the wrong not occurred." Dong Wan Kim v. O'Sullivan, 133 Wn. App. 557, 564, 137 P.3d (2006). The measure of damages is the "amount of loss actually sustained as a proximate result of the attorney's conduct." Matson v. Weidenkopf, 101 Wn. App. 472, 484, 3 P.3d 805 (2000) (citing Tilly v. Doe, 49 Wn. App. 727, 732, 746 P.2d 323 (1987); see Martin, 43 Wn. App. at 412).

A judgment represents a loss and specifies the amount of loss presumptively sustained by the client. The appellant cites no authority in support of his proposition that, because Lerner may have not paid the judgment yet, he has not suffered any actual harm. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

Further, Mann's position that Lerner has not sustained "a loss" by having an

25

existing judgment against him, and would not until Lerner *pays* the judgment runs counter to common experience.  A judgment immediately may affect one's credit, may allow a party to impose lien on one's property, and thus may have real world impact on the victim's finances.  At oral argument, Mann did not contest these effects of a judgment.  Wash. Ct. of Appeals oral argument,  Robert A. Lerner v. Philip P. Mann et al., No. 83364-2-I (March 1, 2023), at 4 min., 35 sec., to 7 min., 15 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023031124/?eventID=2023031124.

This logic accords with the findings in other states that examine damages in legal malpractice cases.  See, e.g., Fox v. Seiden, 382 Ill. App. 3d 288, 887 N.E.2d 736 (2008); Stanley v. Trinchard, 500 F.3d 411, 424 (5th Cir. 2007) (noting effects on personal financial decision making); Roebuck v. Steuart, 76 Md. App. 298, 544 A.2d 808 (Md. Ct. Spec. App. 1988); Montfort v. Jeter, 567 S.W.2d 498 (Tex. 1978); Shipman v. Kruck, 267 Va. 495, 507-508, 593 S.E.2d 319, 326 (2004) (finding, "a client who suffers the entry of a judgment against him indeed suffers a legal injury or damage.").

Therefore, the trial court did not err in finding Lerner was harmed by the judgment even if he had not yet paid it, which is contrary to the satisfaction of judgment referenced above and which has not been appealed and was undisturbed by this court in the last appeal.

2. Collectability of Damages

Separately, Mann also argues that, "[i]n the context of alleged attorney

26

negligence, the law in Washington is clear that an uncollectible judgment does not and cannot serve as a measure of damages." In other words, Mann argues that "the uncollectability of a judgment is a proper defense to a claim for damages in a legal malpractice action."

This argument is without merit (a) because Mann misapplies the analysis and (b) because Mann does not make the requisite showing.

As to the former, while he is the party found to have committed legal malpractice, the issue of uncollectability is not with respect to his own client but with respect to the third-party entity which the client was seeking to collect from, but which malpractice prevented. In other words, each of the cases he cites involve a situation where the plaintiff-client sought damages that they, with the help of their defendant-attorney, could not actually collect against.

Mann cites to Schmidt v. Coogan, 181 Wn.2d 661, 665, 335 P.3d 424 (2014). In that case, the former client (Schmidt) sued her attorney (Coogan) for filing her complaint late such that it was barred by the statute of limitations. Schmidt, 181 Wn.2d at 663. There, the court held, among other things, that the attorney had the burden to determine if the client-plaintiff would actually be able to collect *from the grocery store* she sued. Id. at 667.

In Kim, a plaintiff-client sued an attorney assigned to them by their insurance company, who allegedly hindered the client's acceptance of a settlement offer from an adversary. Kim, 133 Wn. App. at 564. There, this court reasoned that such a damages claim would not succeed, because the plaintiff could not measure their damages by what they may have collected from a possible judgment

27

their attorney did not give them an opportunity to collect *from the tortfeasor*. Id. at 565-66.

In other words, it is the collectability of a judgment *from the defendant in the underlying case* which may be a defense raised by the now-defendant attorney, not the collectability of a judgment from the client.

As to the latter reason to reject this argument, while it is true that a defendant in a legal malpractice case can plead that damages are uncollectible against them, "uncollectability is an affirmative defense that a defendant-attorney must plead and prove." Schmidt, 181 Wn.2d at 665. "The need to establish collectability is the result of an attorney's established malpractice . . . It is a burden created by the negligent attorney. The presumption that a judgment would have been uncollectible places an unfair burden on the wronged client." Id. at 667. Mann did not plead let alone prove at trial that CDI's judgment against Lerner was uncollectable, even if that is the proper inquiry, which it is not.

For these reasons, we conclude trial court did not err in finding that the judgment against Lerner constituted harm. The trial court was correct in not insisting Lerner show the damages assessed against him in the underlying action were collectable by CDI.

### 3. Mitigation of damages

#### a. Law

"The doctrine of mitigation of damages, sometimes referred to as the doctrine of avoidable consequences, prevents recovery for those damages the injured party could have avoided by reasonable efforts taken after the wrong was

committed." Bernsen v. Big Bend Elec. Co-op., Inc., 68 Wn. App. 427, 433, 842 P.2d 1047 (1993) (citing Young v. Whidbey Island Bd. of Realtors, 96 Wn.2d 729, 733-34, 638 P.2d 1235 (1982); Snowflake Laundry Co. v. MacDowell, 52 Wn.2d 662, 674, 328 P.2d 684 (1958); Walker v. Transamerica Title Ins. Co., 65 Wn. App. 399, 405, 828 P.2d 621 (1992)).

"Failure to mitigate damages is an affirmative defense under CR 8(c). Generally, affirmative defenses are waived unless they are (1) affirmatively pleaded, (2) asserted in a motion under CR 12(b), or (3) tried by the express or implied consent of the parties." Id. at 433-34 (citing Farmers Ins. Co. v. Miller, 87 Wn.2d 70, 76, 549 P.2d 9 (1976); Ebling v. Gove's Cove Inc., 34 Wn. App. 495, 500, 663 P.2d 132 (1983); Rainier Nat'l Bank v. Lewis, 30 Wn. App. 419, 422, 635 P.2d 153 (1981)).

Only where "the substantial rights of a party have not been affected" is "noncompliance [] considered harmless and the defense is not waived." Id. at 434 (citing Farmers Ins., 87 Wn.2d at 76; Mahoney v. Tingley, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975)).

b. Analysis

Again, Mann claims that Lerner is not entitled to the full damages because he failed to mitigate his damages by making immediate payment to stop the court's imposition of statutory interest from accruing. Mann, however, cites to no authority to support this assertion. For this reason alone, this argument fails. City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (2020) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)) ("'Where no

authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'").

Furthermore, at oral argument, when given another opportunity to support this assertion, Mann conceded he had no cases on this point. Wash. Ct. of Appeals oral argument, supra, at 1 min., 18 sec., through 1 min., 31 sec.

Moreover, Mann did not plead this issue, nor did he move to dismiss the damages under CR 12(b)(6), nor were the issues related to mitigation tried in any way at trial. For these reasons, regardless of whether the most updated amount is identified in the trial court's order, we conclude this court did not abuse its discretion, for purposes of this appeal,[7] and should affirm the award. Whitlock, 108 Wn. App. at 932.

### III.    CONCLUSION

For the foregoing reasons, we affirm the judgment and decision of the trial court.

Díaz, J.

WE CONCUR:

Chung, J.                         Brummn, J.

---

[7] Again, issues regarding the precise amounts of the awards were the subject of a separate appeal to the consolidated order of April 14, 2020. The precise amount due to Lerner after the offsets is properly handled there.